UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Arthur Lavin, *et al.*, | ) | Case No. 1: 10 CV 1986 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | |
| Jon Husted, in his official capacity | ) | MEMORANDUM OPINION |
| as Ohio Secretary of State, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. (ECF #51-Defendant's Motion; ECF #52- Plaintiffs' Motion).  The motions are now fully briefed and the Court has heard oral argument from counsel on the pending motions.  For the reasons that follow, Plaintiffs' Motion for Summary Judgment (ECF #52) is denied and Defendant's Motion for Summary Judgment (ECF #51) is granted.

**Factual and Procedural Background**[1]

Plaintiffs, who are Ohio physicians and Medicaid providers[2], filed this action on

---

[1] The statements of facts in the Court's Memorandum Opinion on Plaintiffs' Motion for A Preliminary Injunction and the Magistrate Judge's Report and Recommendation on the same Motion issued earlier in these proceedings are incorporated herein by reference.

[2] The names of the Plaintiffs are Arthur Lavin, M.D., Jason Chao, M.D., Michael Devereaux, M.D., Patricia J. Kellner, M.D., Jerone Liebman, M.D., Eric R. Schreiber, M.D., Constance D. Magoulias, M.D., Peter A. Degolia, M.D., and Nathan R. Beachy, M.D.  All of the Plaintiffs claim to be Ohio Medicaid providers who serve Medicaid patients, as authorized by the Ohio Department of Job and Family Services. (Compl. at ¶¶3-11) From Plaintiffs' declarations, it appears that only Dr. Lavin has an ownership interest in a Medicaid provider.  Specifically, Dr. Lavin is the 100% owner of Advanced Pediatrics, which is a Medicaid provider. (2nd Lavin Dec.

September 3, 2010, seeking a declaratory judgment that Ohio Rev. Code § 3599.45 violates the First and Fourteenth Amendments to the United States Constitution and an injunction barring Defendant[3], the Secretary of State, from enforcing § 3599.45 against candidates for attorney general or county prosecutor to whom Plaintiffs wish to make campaign contributions.

The Ohio General Assembly adopted Senate Bill 159 in 1978 which barred Medicaid providers from fraudulently claiming payments for ostensible services and provided for the investigation and prosecution of Medicaid fraud. Included in Senate Bill 159 was the provision at issue here which provides in relevant part:

> (A) No candidate for the office of attorney general or county prosecutor or such a candidate's campaign committee shall knowingly accept any contribution from a provider of services or goods under contract with the department of job and family services pursuant to the medicaid program of Title XIX of the "Social Security Act," 49 Stat. 620 (1935), 42 U.S.C. 301, as amended, or from any person having an ownership interest in the provider. . . .
>
> (B) Whoever violates this section is guilty of a misdemeanor of the first degree.

Ohio Rev. Code § 3599.45.

Plaintiffs allege that they contacted the campaign office of Ohio Attorney General Richard Cordray in July 2010 to ask how Plaintiffs might make a donation to his campaign for re-election. The campaign office told Plaintiffs that it could not accept campaign contributions from Plaintiffs because they provided services to patients insured by Medicaid. Plaintiffs also

---

at ¶2)

[3] The current Secretary of State Jon Husted, was substituted for Jennifer Brunner, who held the office of Secretary of State when this action was filed. The Secretary has been sued in his official capacity, as the Ohio Secretary of State, who is the chief elections officer of Ohio and is charged with enforcing the State's election laws. Ohio Rev. Code § 3501.04.

discovered that Cordray's campaign website also warns potential donors that it is not permitted to accept campaign contributions from Medicaid providers or from any person having an ownership interest in the provider. Plaintiffs filed this action two months later, asserting that their First Amendment rights have been violated and that they will suffer irreparable harm if Defendant is not enjoined from enforcing § 3599.45 so that they will be permitted donate to Mr. Cordray's campaign (or any other candidate running for attorney general or county prosecutor) before election day in November, 2010.

This Court denied Plaintiffs' Motion for a Preliminary Injunction finding that Plaintiffs failed to demonstrate a strong likelihood of success on the merits of their claim, and, without a finding of likelihood of success on the merits, irreparable injury could not be presumed. (See ECF #24) Specifically, the Court found that under the standard applicable in this instance announced in *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) and its progeny, § 3599.45 is Constitutional so long as it is closely drawn to match a sufficiently important governmental interest. Based upon the evidence before the Court at that time, it was determined that the Secretary set forth a sufficiently important state interest behind §3599.45, the prevention of corruption or the appearance of corruption arising from Medicaid providers contributing to the campaigns of candidates for Attorney General or County prosecutor–the offices charged with enforcing the Medicaid fraud provisions against Medicaid providers. Further, the Court found that §3599.45 was closely drawn to match the state's interest in preventing corruption or the appearance of corruption.

In making these findings, the Court noted:

> A contribution restriction, such as the one at issue here, is closely drawn if it "do[es] not undermine to any material degree the potential for

3

robust and effective discussion of candidates and campaign issues by individual citizens, associations, the institutional press, candidates or political parties." *Buckley*, 424 U.S. at 29.  In applying this standard, the Supreme Court instructed that "we have 'no scalpel to probe' each possible contribution level.  We cannot determine with any degree of exactitude the precise restriction necessary to carry out the statute's legitimate objectives.  In practice, the legislature is better equipped to make such empirical judgments, as legislators have 'particular expertise' in matters related to the costs and nature of running for office." *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (citations omitted). As such, courts should ordinarily defer to the legislature's determination of such matters. *Id*.

The statute at issue here applies only to Medicaid providers, and their owners, as contributors and the enforcers of the Medicaid statute, as the recipients. It only prohibits direct contributions from Medicaid providers to candidates for offices that prosecute Medicaid fraud.  It does not prevent Medicaid providers, or their owners, from contributing to any other candidate for any other state or county office.  In addition, the statute does not limit contributions by employees or families of Medicaid providers.  While candidates for attorney general or county prosecutor are prohibited by the statute from accepting direct financial donations from Medicaid providers and their owners, the Medicaid providers and owners may exercise their rights of free association and speech under the First Amendment by volunteering their time to such candidates and may certainly "enter into robust and effective discussion of candidates and campaign issues." Thus, the statute does not prohibit Plaintiffs from supporting a candidate for attorney general or county prosecutor. Accordingly, the contribution ban of § 3599.45 is more properly described as a "merely marginal speech restriction," which does not materially limit the robust and effective discussion of candidates.  *FEC v. Beaumont*, 539 U.S. 146, 161 (2003)("restrictions on political contributions have been treated as merely 'marginal' speech restrictions...because contributions lie closer to the edges than to the core of political expression").

As the First Amendment has not been burdened beyond marginal speech restrictions related to contributions, this Court will not second guess the legislature as to the precise restrictions necessary to carry out the state's sufficiently important government interest

ECF #24.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most

civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

> Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

**Discussion**

The issues before this Court remain the same as the issues that were presented in

7

connection with Plaintiffs' Motion for a Preliminary Injunction. Defendant asserts that § 3599.45 furthers a sufficiently important state interest because it prevents corruption and/or the appearance of corruption. Plaintiffs assert that Defendant has failed to produce adequate evidence of any corruption sufficient to support § 3599.45's ban on contributions by Medicaid providers.

Defendant also contends that § 3599.45 is closely drawn to advance the sufficiently important state interests of preventing corruption and the appearance of corruption. Plaintiffs argue that § 3599.45 is not closely drawn to further a sufficiently important governmental interest.

Finally, Plaintiffs argue that § 3599.45 is overbroad in that it prohibits contributions from those with even a *de minimus* ownership interest in a Medicaid provider. Defendant contends that the Court should not entertain Plaintiffs' overbreadth claim because it is unwarranted in this situation.

The standard that courts apply to determine whether laws restricting campaign contributions and expenditures unconstitutionally impinge on a plaintiff's rights of association and speech was established by the Supreme Court in *Buckley v. Valeo*, 424 U.S. 1 (1976) and its progeny. In *Buckley*, the Supreme Court held that contributing to political campaigns is an activity protected by the First Amendment's guarantees of free association and free speech. *Id.* at 14-19. The Court noted that a contribution restriction impacts a plaintiff's associational rights because "[m]aking a contribution, like joining a political party, serves to affiliate a person with a candidate." *Id.* at 22. However, the Court also noted that "[a] limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal

8

restriction upon the contributor's ability to engage in free communication. A contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support." *Id*. at 20-21. Thus, the Court held that a contribution limit, such as § 3599.45, will be found constitutional so long as it is "closely drawn" to match a "sufficiently important" governmental interest. *Id.* at 25.

Moving first to the issue of whether the Secretary has asserted a state interest sufficiently important to justify limiting campaign contributions, the Supreme Court has placed the evidentiary burden on the state to establish a sufficiently important interest. With respect to the amount of evidence required, the Court stated: "The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." *Nixon v. Shrink Missouri Government PAC,* 528 U.S. 377, 391 (2000).

The Secretary asserts that Ohio's limits on campaign contributions by Medicaid providers are justified by the State's interest in preventing corruption and avoiding the appearance of corruption. The Supreme Court ruled in *Buckley* and in several cases thereafter that such an interest is sufficiently important to justify limits on campaign contributions. *See Buckley*, 424 U.S. at 26-29; *see also Randall v. Sorrell*, 548 U.S. 230, 247-49 (2006); *McConnell v. FEC*, 540 U.S. 93, 143-45 (2003) *overruled in part by Citizens United v. FEC*, 130 S.Ct. 876 (2010); *Nixon*, 528 U.S. at 388-95; *California Medical Ass'n v. FEC*, 453 U.S. 182, 194-95; *Citizens against Rent Control v. City of Berkeley*, 454 U.S. 290, 296-97 (1981). The Secretary has presented evidence to demonstrate that Medicaid fraud is an ongoing problem in Ohio. The Secretary has not demonstrated that Medicaid fraud in Ohio is any more or less a problem than it

is in the nation as a whole, although both sides agree that no other state has enacted a contribution limit similar to § 3599.45. The Secretary offers no evidence that corruption or the appearance of corruption between Medicaid providers and county prosecutors or the Ohio Attorney General was a particular problem at any time before, during, or after passage of SB 159. While the Supreme Court has "never accepted mere conjecture as adequate to carry a First Amendment burden," *Nixon*, 528 U.S. at 392, the Court has also noted that corruption and the appearance of corruption are problems endemic in the American political system. *Buckley*, 424 U.S. at 26-29; *Nixon*, 528 U.S. at 388-89. Given the lack of novelty and high plausibility of the government interest asserted by the Secretary to justify Ohio's campaign limits, the quantum of evidence necessary to satisfy the heightened judicial scrutiny in this case is relatively small. The Court finds that the Secretary has presented sufficient evidence regarding Medicaid fraud in Ohio and the roles of county prosecutors and the Attorney General in combating that fraud to carry his burden of demonstrating a sufficiently important governmental interest to justify limiting campaign contributions.

  A closer question is whether § 3599.45 is closely drawn to advance the sufficiently important state interests of preventing corruption and the appearance of corruption. A contribution limitation need not be the most limited restriction possible in order to comply with the "closely drawn" requirement. A contribution restriction is closely drawn if it "do[es] not undermine to any material degree the potential for robust and effective discussion of candidates and campaign issues by individual citizens, associations, the institutional press, candidates or political parties." *Buckley*, 424 U.S. at 29. The Supreme Court has routinely admonished courts that

> we have 'no scalpel to probe' each possible contribution level. We cannot determine with any degree of exactitude the precise restriction necessary to carry out the statute's legitimate objectives. In practice, the legislature is better equipped to make such empirical judgments, as legislators have 'particular expertise' in matters related to the costs and nature of running for office.

*Randall*, 548 U.S. at 248 (citations omitted). As such, courts should ordinarily defer to the legislature's determination of such matters. *Id*. See also, *Nixon*, 528 U.S. at 391 (A court should not "second guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared").

Plaintiffs assert that § 3955.45 is not closely drawn because it is a complete ban on contributions by Medicaid providers and owners to candidates for county prosecutor and attorney general and because it prevents a Medicaid provider from contributing to the campaign of a candidate for county prosecutor in all 88 Ohio counties rather than the county or counties where the Medicaid provider lives and works.

While § 3599.45 places a ban rather than a limit on direct campaign contributions by Medicaid providers and their owners to candidates for county prosecutor and attorney general, it does not prevent Medicaid providers and their owners from making contributions to a Political Action Committee or political party that supports a candidate for county prosecutor or attorney general. Further, § 3599.45 does not place any limit on a family member or employee of a Medicaid provider or owner from contributing to a candidate for county prosecutor or attorney general and Medicaid providers and owners may solicit funds on behalf of candidates for county prosecutor or attorney general. Moreover, § 3599.45 does not infringe upon a Medicaid provider's ability to make symbolic expressions of support or prevent any provider or owner from participating in any other First Amendment activity in support of a candidate for attorney

11

general or county prosecutor. As such, this Court determined that the contribution ban of § 3599.45 is more properly described as "merely [a] marginal speech restriction," which does not materially limit the robust and effective discussion of candidates. *FEC v. Beaumont*, 539 U.S. 146, 161 (2003)("restrictions on political contributions have been treated as merely 'marginal' speech restrictions...because contributions lie closer to the edges than to the core of political expression"). That finding remains the same. As the First Amendment has not been burdened beyond marginal speech restrictions related to contributions, this Court will not second guess the legislature as to the precise restrictions necessary to carry out the state's sufficiently important government interest. Accordingly, the Court finds that § 3599.45 is closely drawn to advance the sufficiently important state interests of preventing corruption and the appearance of corruption.

Finally, Plaintiffs argue that even if the Court should find that § 3599.45 is closely drawn to advance a sufficiently important state interest, the statute's prohibition on contributions from anyone with an ownership interest in a Medicaid provider is constitutionally overbroad. Specifically, Plaintiffs argue that by the plain language of the statute, "an ownership interest" means any ownership interest however infinitesimal. As such, Plaintiffs posit that a person who owns one share of a publicly held Medicaid provider such as Walmart or Target has an ownership interest in a Medicaid provider which would prevent them from being able to donate to the campaign of a candidate for county prosecutor or attorney general.

None of the Plaintiffs currently before the Court is a *de minimus* shareholder of a publicly held Medicaid provider and the Court has determined that application of § 3599.45 is constitutional as applied to them. Therefore, Plaintiffs would not traditionally have standing

12

under established prudential principles or Article III to challenge § 3599.45 on the ground that § 3599.45 is unconstitutional as applied to a *de minimus* shareholder of a publicly held Medicaid provider. *See New York v. Ferber*, 458 U.S. 747, 767 (1982) ; *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1960) (The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.)[4]  As such, Plaintiffs ask the Court to apply the overbreadth doctrine.

The First Amendment overbreadth doctrine is one of the few exceptions to the traditional rule and must be justified by "weighty countervailing policies." *Ferber*, 458 U.S. at 768 citing *United States v. Raines,* 362 U.S. 17, 22-23 (1960).  The overbreadth doctrine permits litigants "to challenge a statute not because their own rights of free expression are violated, but because . . . the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612.  The Supreme

---

[4] The Supreme Court noted that the traditional rule reflects two cardinal principles of our constitutional order: the personal nature of constitutional rights, *McGowan v. Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961), and prudential limitations on constitutional adjudication. In addition to prudential restraints, the traditional rule is grounded in Art. III limits on the jurisdiction of federal courts to actual cases and controversies. Federal courts have "no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered, one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' *Ferber*, 458 U.S. at 768 and n.20. (Citations omitted)

Court has cautioned courts to apply the overbreadth doctrine with great care and only in the most egregious situations:

> The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort." *Broadrick*, 413 U.S., at 613, 93 S.Ct., at 2916. We have, in consequence, insisted that the overbreadth involved be "substantial" before the statute involved will be invalidated on its face.

*Ferber*, 458 U.S. at 768-769. The Court emphasized that "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

This case does not involve "pure speech." It includes conduct that touches on free speech and association. The Court has found that § 3599.45 is closely drawn to further a sufficiently important government interest and is not unconstitutional as applied to these Plaintiffs. Further, the Court has determined that § 3599.45 is at most a marginal speech restriction and did not prevent Plaintiffs from exercising their rights of free association and speech under the First Amendment or from entering into robust and effective discussion of candidates and campaign issues. Accordingly, the alleged overbreadth of § 3599.45 is not substantial enough to justify invalidating it based upon the overbreadth doctrine.

## Conclusion

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment and Permanent

14

Injunction (ECF 52) is DENIED and Defendant's Motion for Summary Judgment (ECF #51) is granted. This action is terminated.

**IT IS SO ORDERED.**

                                            *Donald C. Nugent*
                                            DONALD C. NUGENT
                                            UNITED STATES DISTRICT JUDGE

DATED:  July 22, 2011