## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ARTHUR LAVIN, *et al.*, ) | |
| ) | CASE NO.   1:10-CV-1986 |
| Plaintiffs, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| JENNIFER BRUNNER, *in her official* ) | |
| *capacity as Ohio Secretary of State*, ) | **REPORT AND RECOMMENDATION** |
| ) | DOC. NO. 97 |
| Defendant.  _____ ) | |

This case is before the magistrate judge on referral.  Before the court is the

motion of plaintiffs ("Motion"), Arthus Lavin ("Lavin"), Jason Chao, Michael W.

Devereaux, Patricia J. Kellner, Jerome Liebman, Eric R. Schreiber, Constance D.

Magoulias, Peter A. DeGolia, and Nathan R. Beachy, for attorney's fees in the amount

of $657,652.75, and expenses and costs in the amount of $7,792.93, pursuant to 42

U.S.C. § 1988 ("§ 1988") ("Motion").  Doc. No. 97.  Defendant, Jon Husted, in his official

capacity as Ohio Secretary of State ("Secretary"), opposes any award of fees,

expenses, and costs and, in the alternative, opposes the amount requested as

excessive ("Opposition").  Doc. No. 106.  For the reasons given below, plaintiffs' costs

and fees should be awarded after the following deductions are made from plaintiffs'

request:

1.      $100,183.00 for exploratory work performed between July 1, 2010 through

September 2, 2010, prior to plaintiffs' signing the fee agreement;

2.  $1,164.13 for costs incurred prior to September 2, 1010;

3.  $10,463.75 to account for the reduced rate for work performed by Screen;

4.  $164.00 for work done in *Kilroy* and improperly billed to the present case;

5.  $1,120.00 due to the imprecision in block billing when attempting to account *post hoc* for time spent talking to the press;

6.  $4,252.50 representing all attorneys' fees requested for Mills and Hill;

7.  $24,306.94 to reflect an across-the-board reduction of 25% for discovery related to third parties'

8.  $60,972.13 to reflect an across-the-board reduction of 25% for appellate work; and

9.  $386.77 due to unnecessary costs incurred as a result of Ms. Gupta's travel to Cincinnati ($280.83) and the excessive cost of Mr. Chandra's hotel room in Cincinnati ($105.94).

Accordingly, it is recommended that Plaintiffs be awarded a total of $454,635.53 in fees and $6,442.03 in costs for this litigation.

I.

In 1978, the Ohio General Assembly adopted Senate Bill 159.  This bill included provisions barring Medicaid providers from fraudulently claiming payments for ostensible services.  The bill charged the state attorney general with investigating suspected Medicaid fraud and the state attorney general and the 88 country prosecuting attorneys with prosecuting suspected cases of Medicaid fraud.  The bill also prohibited the state attorney general or any of the 88 county prosecutors from

2

accepting campaign contributions from any Medicaid providers or any person having any ownership interest in a Medicaid provider.  Ohio Rev. Code § 3599.45 ("§ 3599.45").

In July 2010, Lavin contacted the campaign office of Ohio Attorney General Richard Cordray ("Cordray") to ask how plaintiffs might make a donation  for his campaign for re-election.  The campaign office told Lavin that it could not accept campaign contributions from plaintiffs because they served patients insured by Medicaid.  Upon learning that they would not be able to contribute to Cordray's campaign, plaintiffs filed suit this court on September 9, 2010 pursuant to 42 U.S.C. § 1983 ("§ 1983").  The complaint alleged that Ohio's prohibition against Medicaid providers' contributing to the campaigns of the Ohio Attorney General or any county prosecutor was an unconstitutional infringement of the providers' First Amendment rights.

The day after filing their suit, plaintiffs filed a motion for a preliminary injunction to block enforcement of § 3599.45 pending the upcoming election.  The parties filed proposed findings of fact and conclusions of law, and on October 7, 2010, the court held a hearing on plaintiffs' motion.  On October 12, 2010, the magistrate judge issued a Report and Recommendation ("R&R") recommending that the motion for a preliminary injunction be granted.  Defendant filed objections to the R&R on October 19, 2010, and plaintiffs filed a response to the objections on October 22, 2010.  On October 27, 2010, the district court judge declined to adopt the R&R and denied plaintiffs' motion.

The parties then conducted discovery on the merits of the case.  Plaintiffs'

discovery included research into the legal requirements for restrictions on campaign

contributions, Ohio's campaign finance law and its legislative history, media coverage of

corruption *vis á vis* Medicaid providers and Medicaid fraud prosecutors, the comparison

between § 3599.45 and similar laws in other states, and the types and numbers of

Medicaid providers. Plaintiffs issued subpoenas to Attorney General Mike DeWine

(which was quashed) and to several public corporations that qualified as Medicaid

providers within the meaning of § 3599.45 and attempted to determine the number of

shareholders with an ownership interest in each corporation. Plaintiffs also attempted

to determine the number of mutual funds holding stock in the above corporations in

their portfolios. At this time, plaintiffs' counsel began representation of a shareholder of

a Medicaid provider in a similar suit, *Kilroy v. Husted*, Case No. 2:11-cv-145 (S.D. Ohio

2011). This shareholder suit was not vulnerable to the arguments against the instant

plaintiffs' suit on the ground of standing, although the defendant later asserted an

Eleventh Amendment defense and a different argument regarding standing in *Kilroy*.

On March 16, 2011, the parties filed cross-motions for summary judgment. Both

motions were opposed and supported by reply briefs. The court held oral argument

over the motions for summary judgment on May 18, 2011. Subsequently, plaintiffs

requested and were granted leave to supplement the record. On July 22, 2011, the

court denied plaintiffs' motion for summary judgment and granted defendant's motion.

On August 19, 2011, plaintiffs filed a notice of appeal of the district court's

decision to the Sixth Circuit Court of Appeals. Adjudication in the Sixth Circuit included

opposing late-filed requests to intervene, identifying and coordinating with *amici*, merit

briefs, and oral argument, including a moot court practicum. Plaintiffs' initial merit brief

4

was rejected by the appellate court for not conforming to its rules.  The Sixth Circuit gave plaintiffs an opportunity to file a corrected brief in conformity with the rules, and plaintiffs did so.

On July 25, 2012, the Sixth Circuit reversed the judgment of the district court and remanded the case for entry of judgment in favor of the plaintiffs.  The district court entered judgment in favor of plaintiffs on September 11, 2012, declared § 3599.45 unconstitutional in its entirety, and enjoined enforcement of the statute.  Plaintiffs now move for attorney's fees, expenses, and costs pursuant to § 1988.

## II.

Section 1988 authorizes courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation.  Section 1988 provides in relevant part that a district court may allow the prevailing party[1] in any action brought pursuant to § 1983 a reasonable attorney's fee as part of the costs, and the court may include experts' fees as part of the attorney's fee.  *See* § 1988(a) & (b).  Because the purpose of § 1988 is to ensure "'effective access to the judicial process' for persons with civil rights grievances . . . a prevailing plaintiff  'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting  S. Rep. No. 94-1011, p. 4 (1976), and U.S. CODE CONG. & ADMIN. NEWS 1976, p. 5912).  In the Sixth Circuit, a defendant bears the burden of making a "strong showing" of special circumstances sufficient to warrant denying an

---

[1]  "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Nadeau v. Helgemoe,* 581 F.2d 275, 278-279 (1st Cir. 1978).  In the present case, it is not disputed that plaintiffs are a prevailing party.

award of fees and costs to a prevailing plaintiff.  *Deja Vu of Nashville, Inc. v. Metro.*

*Gov't of Nashville & Davidson County*, 421 F.3d 417, 422 (6th Cir. 2005) (quoting

*Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991) (citation omitted)).

The usual starting point in determining the proper amount for an award of fees is

multiplying the hours worked and the rates charged for that work.  *Isabel v. City of*

*Memphis*, 404 F.3d 404, 415 (6th Cir. 2004); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th

Cir. 1999).  The resulting "lodestar" amount is a useful foundation from which to gauge

the reasonableness of the requested award:

> The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended."  S. Rep. No. 94-1011, p. 6 (1976).  Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, "billing judgment" is an important component in fee setting. It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Copeland v. Marshall,* 205 U.S. App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433-34.

The party requesting fees bears the burden of demonstrating the

reasonableness of the number of hours charged, and documentation of those hours

"must be of sufficient detail and probative value to enable the court to determine with a

high degree of certainty that such hours were actually and reasonably expended in the

prosecution of the litigation."  *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th

Cir. 2008).  Although a party need not document each minute spent on a task, documentation of work should indicate the general subject matter on which time was expended.  *Id.*  When a court determines that a reduction in the requested number of hours is appropriate, the court may apply an across-the-board reduction by a certain percentage as an alternative to line-by-line reductions.  *See Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x. 226, 228 (6th Cir. 2005); *see also Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997); *overruled on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001).

The reasonableness of a requested hourly rate is measured by reference to the prevailing rates in the relevant market for similar work by attorneys of comparable skill, experience, and reputation.  *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984); *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004).  The "relevant market" is the "venue of the court of record," not a foreign counsel's "geographical area wherein he maintains his office and/or normally practices."  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).  In addition, the hourly rate should not be greater than the rate required to encourage competent and experienced lawyers to undertake the representation.  *Reed*, 179 F.3d at 472-73.  In determining a reasonable hourly rate, a court may consider affidavits or declarations from attorneys or experts, awards in analogous cases, state bar association guidelines, and its own knowledge and experience with similar requests for fees.  *See Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007).

Once a court has determined reasonable hours and a reasonable rate and

7

calculated the lodestar amount, the court may adjust the final fee award upwards or downwards.  In making such adjustments, the court should consider the twelve factors identified in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.[2]  The application of these twelve factors is meant to produce "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys" and which compensate "as is traditional with attorneys compensated by a fee-paying client" for "all time reasonably expended on a matter." *Hensley*, 461 U.S. at 430 n.4 (quoting S. Rep. No. 94-1011 at 6).  Nevertheless, each case is fact-specific, and there is no precise formula for determining fees.  *Hensley*, 461 U.S. at 436.  The most critical factor is the degree of success obtained.  *Id.*  However, there is a "strong presumption that the lodestar represents the reasonable fee." *Burlington v. Dague*, 505 U.S. 557, 562 (1992).

In the present case, the time and labor required is implicitly addressed in the discussion of whether the hours billed for various tasks were reasonable.  The central issue of the case, whether § 3599.45 was unconstitutional, was somewhat novel as

---

[2]  In *Hensley*, 461 U.S. at 432, the Supreme Court recognized the 12 *Johnson* factors, but noted that these factors are usually subsumed within the calculation of reasonable hours at a reasonable rate.

there was relevant case law but none squarely on point. The case required a moderate level of skill. The attorneys were precluded from other employment by acceptance of the case to the extent that hours expended in this case were hours that could not be billed in other cases. The question of the reasonableness of the hours expended is discussed below. The court considers plaintiffs' customary fees in the discussion below. The fee in this case was contingent. Early in the case, there were some time limitations imposed by the upcoming election. However, as Lavin contacted his attorneys in April and they did not begin work until July, some of the limitations imposed by time were of plaintiffs' own making. The results obtained were excellent in that § 3599.45 was declared unconstitutional. This does not imply, however, as described below, that all arguments made in the course of the case were successful. The experience of the attorneys is addressed in the discussion of the propriety of their rates. The other *Johnson* factors are not of great relevance in the present case. In sum, the *Johnson* factors do not clearly warrant either an increase or a decrease in the lodestar amount except insofar as the court determines that the hours billed and the rates charged were reasonable.

III.

In the present case, plaintiffs seek $665,645.68 in attorneys' fees, costs, and expenses. This request includes the following:

Attorneys' fees to the Chandra Law Firm . . . . . . . . . . . . . . $620,867.75

Attorneys' fees to Berkman, Murray, Gordon & DeVan . . . . . $32,532.50

Attorneys' fees to the Mills Law Office LLC . . . . . . . . . . . . . . $1,890.00

Attorneys' fees to professor Jessie Hill . . . . . . . . . . . . . . . . . $2,362.50

9

Costs and expenses to the Chandra Law Firm . . . . . . . . . . . $7,992.93

To justify the requests fees, costs, and expenses, plaintiffs submit an invoice of

attorneys' fees billed to plaintiffs by the Chandra Law Firm; a bill of costs; an invoice for

expenses, including costs, from the Chandra Law Firm, and affidavits in support of the

invoices and bill of costs.  *See* Motion, Invoice to Arthur Lavin ("invoice"), Exh. 1B; *see*

*also* exhs. 1, 1A, 1C, 2, 2A, 3, 3A, 4, and 4A; and Bill of Costs, doc. no. 99, Exhs. 1, 1A.

Defendants calculate, and plaintiffs do not contest, that plaintiffs are seeking attorneys'

fees for the following hours:

| ATTORNEY | HOURS |
|---|---|
| DiTirro (paralegal) | 3.5 |
| Gupta | 987.85 |
| Hill | 6.3 |
| Mills | 6 |
| Screen | 418.55 |
| Chandra | 434.2 |
| Vasvari | 118.4 |
| Von der Heydt (law students) | 26.4 |
| Zaranto (paralegal) | 36.5 |

Plaintiffs seek attorneys' fees at the following rates:

| ATTORNEY | YEAR GRADUATED | HOURLY RATE |
|---|---|---|
| DiTirro | paralegal | $105 |
| Gupta | 2004 | $300 |
| Hill | 1999 | $350 |
| Mills | 2002 | $315 |
| Screen | 1987 | $465 |
| Chandra | 1994 | $410 |
| Vasvari | 1991 | $275 |
| Von der Heydt | law student | $75 |
| Zaranto | paralegal | $110 |

Plaintiffs supply affidavits and other documents in support of their contention that the

10

rates requested are those charged to paying clients.

The court shall examine the reasonableness of the requested fees, expenses, and costs by examining each of the objections that defendant asserts to the requested amounts.

A.    *Whether work performed and costs incurred prior to written fee agreements should be compensated*

Defendant argues that no fees for work done between July 1, 2010 and September 2, 2010, when plaintiffs signed the fee agreements, should be awarded because Ohio Prof. Con. R. 1.5(c)(1) requires that all contingency fee agreements be expressed in writing. As plaintiffs' agreement with their attorneys was for representation on a contingency basis, defendants assert, work performed before a written agreement was signed should not be compensated.[3] Defendant calculates the amount of work performed from July 1, 2010 through September 2, 2010 as consisting of 302.75 hours totaling $100,183.00 in fees. Plaintiffs have not disputed that calculation, although they do dispute the substance of defendant's argument.

Plaintiffs reply that Ohio law does not require that a contingent fee agreement be reduced to writing before work commences. Plaintiffs also note that because of the limited time available before the 2010 elections, they were constrained to start work on the case immediately, before a written agreement could be signed, if they were to obtain a decision prior to the election.

---

[3]  Defendants also argued in their opposition brief that no fees should be awarded because only one of the nine plaintiffs signed the fee agreement. Plaintiffs have demonstrated that each plaintiff signed separate fee agreement, all agreements having identical terms. Defendant agreed during oral argument that this issue had been resolved. *See* Transcript of Proceedings, December 18, 2012 ("Tr."), doc. no. 126, pp. 18-19.

Ohio Prof. Con. R. 1.5(c)(1) provides as follows:

Each contingent fee agreement shall be in a *writing* signed by the client and the lawyer and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the payer in the event of settlement, trial, or appeal; litigation and other expense to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement shall clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party.

(Emphasis in the original).

The rule is perfectly clear in requiring that a contingent fee agreement be in writing.  While the rule is a rule of professional conduct rather than a law of contract, it clearly demonstrates that Ohio disfavors oral contingency fee agreements.

Plaintiffs offer the Declaration of Arthur Lavin for the proposition that plaintiffs understood that they had a contingent fee agreement with the Chandra Law Firm and the law firm of Berkman, Gordon, Murray & DeVan, LLC ("Berkman") as of July 1, 2010.  But Lavin's declaration does not entirely support that proposition.  The declaration reads in relevant part as follows:

2. By July 1, 2010, my fellow named plaintiffs (all friends and colleagues of mine) understood that we had engaged The Chandra Law Firm, LLC and Berkman, Gordon, Murray & DeVan to serve as our counsel to research, investigate, and if legally warranted challenge the constitutionality of Ohio Rev. Code § 3599.45 . . . .

4. We understood, and Mr. Chandra made painstakingly clear from the outset, that my fellow Plaintiffs and I would not be charged fees and costs in the matter, and that under civil-rights law, our counsel would recover fees in any litigation should we prevail.  There was never any doubt in our mind about this, and thus we were not particularly concerned about any written fee agreement memorializing our understanding until such times as Mr. Chandra would inform us that our attorney's had confirmed their belief that the statute was unconstitutional and were prepared to file litigation on our behalf. . . .

12

5.     Mr. Chandra contacted us in late August to inform us that our attorneys'
research had confirmed their belief that the statute was unconstitutional
and that litigation was indeed warranted.  Mr. Chandra transmitted the
written fee agreement, and I signed it.

Declaration of Arthur Lavin, MD, Motion, Exh. 5, pp. 1-2 (punctuation altered from the

original).

Two aspects of Lavin's statement are particularly significant in the context of

defendant's argument.  First, the declaration does not assert that plaintiffs had entered

into a contingent fee agreement as of July 1, 2010.  Rather, it merely asserts that the

plaintiffs understood that the named firms served as plaintiffs' counsel as of that date,

which is by no means the same thing.  Second, Lavin asserts that until the written

contingent fee agreement was sent to him for his signature, the work by the named

firms was exploratory, investigating whether § 3599.45 was, as suspected,

unconstitutional.[4]

In addition, plaintiffs include the letter of Subodh Chandra ("Chandra") of August

31, 2010, Exh. 4A, in their proffered exhibits.  That letter detailed the terms of the

agreement between the Chandra Law Firm and Berkman and the various plaintiffs.  It

included a space at the end of the letter for each plaintiff to sign if he or she accepted

_____

[4]  Lavin's understanding that the named firms' initial work would be exploratory is
supported by the Declaration of Eric H. Zagrans, Motion, Exh. 6, p. 6:

[C]ompetent plaintiffs' counsel, in fee-shifting cases, have to spend even more time
initially screening and investigating a case given the personal financial risk they
bear. . . .  Vigorous screening and pre-suit investigation prevents the filing of
frivolous claims, and courts should encourage and reward it.

Whether courts should reward substantial exploratory work by counsel who present
themselves as experts in the subject area of the investigation is a debatable proposition.

13

the terms and was, in effect, the writing required by Ohio law for contingent fee

agreements.  In that letter, Chandra wrote as follows:

> Both you and the firm are . . . free to terminate the engagement at any time for
> any reason by written notice, subject . . . on your part, if you take the matter to
> another firm, to your current counsel's entitlement to advanced costs and the
> reasonable value of their services should there eventually be a recovery in the
> matter.

Chandra letter at 2.  There is no evidence in the record that plaintiffs were on notice or

had agreed prior to the Chandra letter that if they terminated their relationship with the

Chandra Firm and Berkman that, in the event they prevailed in the case, they would be

responsible for the exploratory research undertaken by those firms to determine

whether they should undertake the representation.  Indeed, the very nature of that

exploration, *whether the firms would undertake the representation*, indicates that there

was no unequivocal agreement by the Chandra Law Firm or Berkman to undertake the

prosecution of this case until the terms of that representation were set forth in the

Chandra letter.  Had the firm declined to undertake the litigation, it would not have

received any compensation from anyone.  There is no reason why the state of Ohio

should be required to pay for work done prior to the commencement of the Chandra

Law Firm's or Berkman's agreement with plaintiffs to undertake this litigation.

There was no fee agreement in the present case until September 2, 2010, and

there is no evidence that the work performed prior to that time was more than an

exploration of whether the Chandra Law Firm and Berkman should accept the case.

Under those circumstances, defendant's argument that he should not be required to

pay attorneys' fees incurred between July 1, 2010 and September 2, 2010 is well-taken.

Defendant calculates the amount of work performed from July 1, 2010 through

14

September 2, 2010 as consisting of 302.75 hours totaling $100,183.00 in fees, and

plaintiffs do not dispute this calculation. Consequently, the court should reduce

plaintiffs' requested attorneys' fees by $100,183.00. In addition, prior to this time, as

reflected in the Chandra firms's billing records, the firm expended $1164.31 in costs.

As there was no fee agreement at the time, this costs should not be reimbursed.

B.      Whether the rates sought by plaintiffs are reasonable

        Defendant also contends that the rates sought by plaintiffs' attorneys are too

high. Defendant argues that the hourly rates plaintiffs seek are substantially higher

than the hourly rates this court found to be appropriate in *Project Vote v. Blackwell*,

Case No 1:06-cv-1628 (N.D. Ohio Mar. 31, 2009), and *Harkless v. Husted*, Case No.

1:06-cv-2284 (N.D. Ohio May 31, 2011). Consequently, defendant concludes, plaintiffs'

hourly rates should be reduced.

        Defendant's argument is not well-taken, for two reasons. First, the legal work in

*Project Vote* and *Harkless* was performed several years earlier than the work performed

in this case. Thus, reliance on those cases ignores the possibility that rates may have

increased in this jurisdiction since that time. Second, in both *Project Vote* and

*Harkless*, plaintiff failed to establish the prevailing rates in the relevant market for similar

work by attorneys of comparable skill, experience, and reputation. In *Project Vote*, the

court found that plaintiff failed to prove that the rates requested were representative of

rates in Northern District of Ohio and found the requested rates, instead, to be

inapplicable because they were similar to rates charged in Washington, D.C.

Memorandum and Order, March 31, 2011, *Project Vote*, Case No 1:06-cv-1628, pp. 21-

15

24.  In *Harkless*, foreign counsel sought the rates prevailing in counsels' practice areas of New York City, Washington, D.C., and Boston.  In each case, the court had to determine appropriate local rates without substantial evidentiary assistance from plaintiff.

The present case is quite different.  As support for the reasonableness of the requested rates, plaintiffs offer the following:  (1) affidavits attesting that the rates sought are those charged to paying clients;[5] (2) redacted documents demonstrating that the requested rates are, indeed, charged to paying clients;[6] (3) affidavits of other attorneys attesting that the requested rates are reasonable in this market for similar work by attorneys of comparable skill, experience, and reputation;[7] and (4) 2010 survey data from the Ohio State Bar Association ("OSBA") providing mean, median, and quartile hourly rates of practitioners by firm size, years in practice, office location, and

---

[5]  Declaration of Subodh Chandra, Motion, Exh. 1, pp. 4-7; Second Declaration of Subodh Chandra, Reply, doc. no. 117, Exh. 1, pp. 5-6; Declaration of Suzanne Zaranko, Reply, Exh. 4, p. 2; Declaration of Ashlie Case Sletvold, Reply, Exh. 22.

[6]  Invoices at Reply, Exhs. 4B, 4C, 4D.

[7]  Declaration of Eric H. Zagrans, Reply, Exh. 6; Declaration of W. Craig Bashein, Reply, Exh. 7; Declaration of David Wolfe Leopold, Reply, Exh. 8; Declaration of Diane E. Citrino, Reply, Exh. 9; Declaration of Christian J. Grostic, Reply, Exh. 10; Second Declaration of David E. Mills, Reply, Exh. 11; Declaration of Aparesh Paul, Reply, Exh. 12; Declaration of Alphonse A. Gerhardstein, Reply, Exh. 13; Declaration of Jack F. Fuchs, Esq., Reply, Exh. 14; Declaration of Daniel Frech, Reply, Exh. 17; Declaration of Paula G. Shakelton, Reply, Exh. 18; and Declaration of Ashlie Case Sletvold, Reply, Exh. 22..

16

field of law.[8]  While some portions of the proffered declarations are not relevant[9] and others lack an adequately developed foundation or intrude on the province of the court,[10] the proffered evidentiary materials generally support the requested hourly rates as being reasonable in the Northern District of Ohio for attorneys of comparable skill, experience, and reputation.  Defendant offers no evidence in support of his contention that the hourly rates sought by plaintiffs are excessive other than *Project Vote* and *Harkless*.[11]

---

[8]  THE ECONOMICS OF LAW PRACTICE IN OHIO:  DESKTOP REFERENCE FOR 2010 ("ECONOMICS OF LAW PRACTICE ") (Ohio State Bar Assoc. 2010), Reply, Exh. 3.

[9]  *See, e.g.*, those portions of the Sletvold Declaration describing the rates for very different work performed at Jones, Day and the Fuchs Declaration. The Fuchs Declaration seems to be mostly boilerplate justifying Fuchs as an expert on the issue of attorney's fees. Although it refers in passing to the reasonableness of the rates in this case, it justifies those rates with reference to ERISA and LMRA class actions, litigation with which Fuchs had experience at Thompson Hine LLP.  The court does not find this to be persuasive or even relevant.

[10]  *See, e.g.*, the Declaration of Dr. Lawrence Howard Stiffman, Reply, Exh. 16, pp. 3-4 and 5, and the Declaration of Screen, Reply, Exh. 21, p. 2.

[11]  Defendant references THE ECONOMICS OF LAW PRACTICE IN OHIO:  DESKTOP REFERENCE FOR 2007 (Ohio State Bar Assoc. 2007), which was used in those cases in determining reasonable rates.  Plaintiffs include that study as Exh. 2 of the Reply. Comparison of the 2007 and 2010 editions of the study confirms that hourly rates rose in the Northern District of Ohio in the three years between publication of the two studies. Moreover, a chart on p. 9 of the 2010 survey demonstrates a substantial rise in hourly rates between 2007 and 2010.  Moreover, as plaintiffs point out, both studies price attorneys, in part, according to level of experience, as measured by years since graduation from law school.  Necessarily, the 2007 edition of the OSBA publication excludes three years of experience in determining  attorneys' rates.  Thus, an attorney who graduated in 2004 would be credited with 3 years' experience in the 2007 publication but would be credited with six years' experience in the 2010 edition.

Plaintiffs seek attorneys' fees at the following rates:

| ATTORNEY | YEAR GRADUATED | HOURLY RATE |
|---|---|---|
| DiTirro | paralegal | $105 |
| Gupta | 2004 | $300 |
| Hill | 1999 | $350 |
| Mills | 2002 | $315 |
| Screen | 1987 | $465 |
| Chandra | 1994 | $410 |
| Vasvari | 1991 | $275 |
| Von der Heydt | law student | $75 |
| Zaranko | paralegal | $110 |

The OSBA survey of attorneys' salaries includes tables charting salaries by law firm

size, location, years of experience, and status (*i.e.*, partner, associate, or paralegal).

The following are the salaries for the two or three contiguous most common salary

ranges for paralegals and associates near the middle of each total range of salaries:

| EXPERIENCE | HOURLY RATE |
|---|---|
| paralegal--10 years | $71-100[12] |
| associate--5 years | $200-249[13] |
| associate--10 years | $200-274 |
| paralegal--10 years | $71-120 |

ECONOMICS OF LAW PRACTICE  at 26-27.

The breakdown by specialties in the OSBA data does not include a separate

category for civil rights specialists.  Plaintiffs, therefore, supplement the OSBA data with

declarations from civil rights attorneys regarding their fees.  Fees for partners in these

declarations include $350 per hour (Citrino), $350-450 per hour (Leopold), $400-500

---

[12]  The distributions of salaries in the OSBA survey does not include any data for paralegals with more than 10 years' experience.

[13]  The OSBA study includes rates only for associates with five years' experience and ten years' experience.

18

per hour (Bashein), and $595 per hour (Zagrans).  Fees for associates range in these

declarations range from $275 (Grostic) to $300 per hour (Paui).  The declarations of

Zagrans, Bashein, Leopold, declare that the hourly rates sought by Gupta, Chandra,

and Screen and for law students and paralegals are reasonable.  The declaration of

Mills declares that the hourly rate sought by Gupta is reasonable.

Plaintiffs also present evidence that the rates sought in the present case are the

rates charged paying clients.  Such a rate has probative value for the rate that is

reasonable in fee-shifting cases.  *Kelley v. Metropolitan City Bd. of Educ.*, 773 F.2d

677, 683 (6th Cir. 1985).

Given the data presented by plaintiffs, the hourly fees sought by plaintiffs are

generally reasonable.  The one exception to the overall reasonableness of the

requested rates is the rate sought for Donald Screen ("Screen"), a partner in the

Chandra Law Firm.  Plaintiffs seek an hourly rate of $465 for work done by Screen in

2010-12.  The referent 2010-12 billing rates for work performed by attorneys with

comparable experience in the OSBA survey are as follows:  $420 for 2010, $437 for

2011, and $454 for 2012.[14]  Consequently, the court should award fees for work done

by Screen at a rate of $440 per hour.  Work performed by Screen represents 418.55

hours of the total work performed in this case.  Charged at $465 per hour, the total fee

---

[14]  *See* Stiffman Declaration, Exh. a.  The court recognizes that Screen may be at the high end of the wide band of comparable attorneys with 16 to 25 years' experience. Nevertheless, as the Sixth Circuit held in *Reed*, the hourly rate should not be greater than the rate required to encourage competent and experienced lawyers to undertake the representation.  *Reed*, 179 F.3d at 472-73.  That Screen charges and receives fees at a rate of $465 per hour is not determinative of whether he should be awarded fees at that rate pursuant to § 1988.

sought for work performed by Screen is $194,625,75.  Charged at $440 per hour, the

total fee that should be awarded for work performed by Screen is $184,162.00.

Consequently, the requested fees should be reduced by the difference, $10,463.75, to

account for the reduced rate for work performed by Screen.

C.     *Whether plaintiffs seek reimbursement for work that is not reimbursable*

        Defendant contends that some of the work for which plaintiffs seek

reimbursement is not reimbursable pursuant to § 1988.  The challenged work is as

follows:  (1) certain work performed in *Kilroy* that should not be included in the present

case; (2) time Sandhya Gupta ("Gupta") and Chandra spent speaking with the press;

(3) time Gupta, Chandra, James von der Heydt ("Heydt"), and Suzanne Zaranko

("Zaranko") spent performing clerical tasks; (4) excessive reimbursement for travel time;

(5) Gupta's attendance at appellate argument; (6) time spent correcting a brief not filed

in conformity with appellate rules; (7) excessive time spent on appeal; and (8) attorneys'

fees for David Mills ("Mills") and Jessie Hill ("Hill"), who were not included in the retainer

agreement as attorneys in this case.

        The court shall address issues (4), (5), (6), (7) and (8), all of which are related to

plaintiffs' appeal, in section D.  *See infra*., pp. 24-33.  For the present, the court shall

address issues (1), (2), and (3).

        1.     *Whether plaintiffs are improperly billing for work performed in Kilroy*

        Defendant asserts that plaintiffs are improperly billing for .2 hours of work by

Chandra on September 11, 2011 for delegating research regarding defendant's request

for admissions after this court's rulings on the motions for summary judgment.

Defendant also contests 4.8 hours billed by Chandra on March 14, 2012 for preparing

for a Fed. R. Civ. P. 30(b)(6) deposition for a representative of the Secretary of State when the appellate merit brief had already been filed in the present case.

Plaintiffs concede that the .2 hours should be deducted from the present case as erroneously billed.  Plaintiffs also note that another .2 hours, billed  by Chandra on September 14, 2011, was also erroneously billed to the present case.  Plaintiffs, therefore, remove from their request $164.00, representing .4 hours billed at Chandra's rate of $410 per hour.

Plaintiffs assert that the 4.8 hours preparing for a deposition was erroneously entered as occurring on March 14, 2012 through a typographical error.  According to plaintiffs, the entry represents work performed in the present case and should properly have been invoiced as occurring on March 14, *2011*. The court presumes the integrity of the lawyers appearing before it and accepts plaintiffs' explanation.

In sum, $164.00 should be deducted from plaintiffs' fee request for work done in *Kilroy* and improperly billed to the present case.

2.  *Whether plaintiffs are improperly seeking reimbursement for time spent speaking to the press*

Defendant contends that four billing entries are not properly compensable because they represent time spent talking to the press:  (1)  billing entry for Gupta for 6.6 hours on August 6, 2012 which states in part, "Correspond with reporter for law360.com"; (2) billing entry for Chandra for .25 hours on September 7, 2010 which states in part, "Field inquiries regarding suit"; (3) billing entry for Chandra for 2.7 hours on August 3, 2012 which states in part, "filed inquiries and phone calls regarding the Court's decision; and (4) billing entry for Chandra for .1 hours on August 5, 2012 which

21

states in part, "Attention to messages re Lavin Sixth Circuit ruling."

Plaintiffs respond that some attorneys' time talking to the press is compensable, but they decline to specify which time talking to the press is compensable and which is not.[15]  They also assert that only some of the time cited by defendant was spent talking to the press and produce declarations from Gupta and Chandra detailing the amount of time actually spent talking to the press on each date.  *See* Declaration of Gupta, Reply, Exh. 20, p. 5, and Second Declaration of Chandra at 2-3.  Most of the questioned entries are "block billings" and include multiple tasks as part of a single entry.  For example, Gupta's August 6, 2012 entry for 6.6 hours lists the following tasks as included in that block of time:  "Correspond with reporter from law360.com; review prior fees motions; draft motion for fees."  Invoice, Motion, Exh. 1B, p. 111.  Gupta estimates in her declaration that the time spent talking to a reporter was no more than .3 of an hour or 18 minutes.  Chandra estimates that the time spent talking to the press in all three of his challenged entries amounted to no more than one hour.

While the court is willing to take attorneys at their word, *post hoc* estimates of time spent cannot be as accurate as contemporaneous reports of that time.  Attorneys

---

[15]  Plaintiffs cite *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1545 (9th Cir.1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993), and *Communities for Equity v. Michigan High School Athletic Ass'n*, 2008 WL 906031 (W.D. Mich. March 31, 2008).  *Davis* allowed attorney compensation for speaking to the press only under narrow circumstances when the press time was intimately related to the conduct of the case.  Plaintiffs do not argue that this was true in the present case.  In addition, the Western District of Michigan held in *Communities,* "Attempting to sway public opinion in favor of Plaintiffs . . . is not compensable.  'The legitimate goals of litigation are almost always attained in a courtroom, not in the media.'"  *Communities*, 2008 WL 906031 at 21 (quoting *Rum Creek Coal Sales, Inc. v. Caperton,* 32 F.3d 169, 176 (4th Cir. 1994)).  The court then denied fees for speaking to the press.

22

who choose the convenience of block billing must also accept the disadvantage that it imprecisely captures how an attorney spends time at each task.  That imprecision should be read against the attorney who enjoys the benefits of block billing when the compensability of one of those tasks is questioned.  Consequently, the time estimated should be increased from a fraction of an hour to the whole hour, resulting in a deduction of one hour's time, $300.00, from the fees detailed by Gupta and two hours' time, $820.00, from the fees detailed by Chandra, for a total deduction of $1,120.00.

     3.     *Whether plaintiffs improperly billed for performing clerical tasks*

Defendant also objects that plaintiffs seek compensation for clerical work that is not compensable or not compensable at attorneys' rates.  In particular, defendant argues that Gupta billed 181.7 hours at all levels for doing clerical or paralegal work, Chandra billed 8.25 hours for clerical work, Heydt billed 2.1 hours for clerical work, and Zaranko billed 31.5 hours for clerical work.[16]

Plaintiffs respond that case law supports the proposition that allocating tasks is within an attorney's discretion and that attorneys should not be penalized for doing routine work themselves when they are not in firms large enough to delegate the work to others.[17]  Plaintiffs also note that the Chandra Law Firm consists of four attorneys

---

[16] Also, Attorney Screen billed time for conducting internet research of mutual funds at a rate of $465.00 per hour.

[17] Plaintiffs cite *Muehler v. Land O' Lakes, Inc.*, 617 F. Supp. 1370, 1379 (D. Minn. 1985) ("Competent plaintiffs' counsel are in the best position to determine how their time and the time of their associates can best be allocated."); *In re Seneca Oil Co.*, 65 B.R. 902, 911 (Bankr. W.D. Okla. 1986)  ("[D]ecisions concerning which tasks an attorney performs and involving the allocation of personnel toward the efficient and effective completion of tasks will be left to the discretion of the professional unless the allocation is egregious.").; *Communities for Equity v. Michigan High School Athletic Ass'n*, 2008 WL 906031, at *12-

and one paralegal.  Case law does, indeed, generally support this proposition.  But as plaintiffs note, *In re Seneca Oil* , 65 B.R. at 911, warns that courts need not abide by attorney discretion when "the allocation is egregious."  The challenged billings by Chandra, Heydt, and Zaranko cannot be described as "egregious."  The hours billed by Chandra and Heydt are *de minimis* and, as plaintiffs note, Zaranko was a paralegal who had no one else to whom to delegate work.  The 181.7 challenged hours billed by Gupta are largely addressed elsewhere.[18]

D.     *Whether plaintiffs seek excessive fees for their attorneys' appellate work*

       Defendant makes a variety of objections to the billings of plaintiffs' attorneys' fees and their costs related to appellate work:  (1) plaintiffs seek excessive reimbursement for travel time; (2) Gupta's attendance at appellate argument is not compensable; (3) time spent correcting a brief not filed in conformity with appellate

---

*13 (W.D. Mich. March 31, 2008); *Roberts v. Nat'l Bank of Detroit*, 556 F. Supp. 724, 728 n.1 (E.D. Mich. 1983).

[18]   The great majority of Gupta's hours alleged to have been spent doing clerical work occurred as part of plaintiffs' historical research or as part of plaintiffs' appellate work.  While this court agrees that historical research of newspapers and non-legal journals should not be billed at lawyers' rates, the court has already recommended that no reimbursement be paid for the historical research, as it was performed before plaintiffs signed the fee agreement.   Reductions in plaintiffs' appellate work are discussed elsewhere.  In addition, defendant's estimate that Gupta spent 181.7 hours doing clerical work is inflated.   A substantial portion of the work alleged to be clerical, such as summarizing case law, was not, in fact, clerical.  On the other hand, plaintiffs' citation of ANTONIN SCALIA & BRYAN A. GARNER, MAKING YOUR CASE:: THE ART OF PERSUADING JUDGES, 123-25 (2008), to support their billing at attorney's rates when attorneys perform clerical tasks is not persuasive.  That work advises attorneys to cite authorities with scrupulous accuracy and verify and proofread repeatedly, since when even one citation is awry, all the rest become suspect.  While this work supports exercising careful legal judgment in *describing* authorities, it does not support a need for legal judgment in *citing and checking* authorities.

rules should not be reimbursed; (4) attorneys' fees for David Mills ("Mills") and Jessie

Hill ("Hill"), who were not included in the retainer agreement as attorneys in this case,

are not compensable; (5) plaintiffs should not be reimbursed for issues that were

unsuccessful on appeal; (6) Chandra should not be reimbursed for his stay in Cincinnati

the night before oral argument; and (7) plaintiffs' attorneys' fees for briefing and on

appeal are excessive.  The court shall examine each of these objections, and plaintiffs'

responses, in turn.

> 1.      *Whether plaintiffs seek excessive reimbursement for travel time*

Defendant contends that plaintiffs seek excessive reimbursement for travel time

because they have billed for travel time at their normal legal rate.  According to

defendant, that rate should be lower, and defendant cites *Perotti v. Seiter*, 935 F.2d

761 (6th Cir. 1991), for the proposition that courts have discretion to determine the

reimbursement rate for travel time.  Defendant also notes that the district judge in this

case, Judge Donald C. Nugent, has held that reimbursing travel at half an attorney's

normal rate is appropriate in fee-shifting cases.  *See Winkelman, et al. v. Parma City*

*Sch. Dist.*, Case No. 1:08-cv-2135, at 10-11 (N.D. Ohio May 22, 2009).

Plaintiffs reply that reimbursing travel time at less that the normal rate would

contravene the law of this circuit.  Plaintiffs cite *Northeast Coalition for Homeless v.*

*Brunner*, 2010 WL  4939946 (S.D. Ohio Nov. 30, 2010), affirming the award of

attorneys' fees in *Northeast Ohio Coalition for Homeless v. Secretary of Ohio*, 695 F.3d

563 (6th Cir. 2012), for this proposition.  The district court awarded travel time at the

attorneys' usual rates, asserting that this was appropriate because time spent traveling

was necessarily time spent not litigating other clients' matters.  The Sixth Circuit

affirmed the trial court's award of fees.  However, the appropriate rate for travel time

was not an issue considered at the appellate level.  Consequently, although the Sixth

Circuit affirmed the district court, it cannot be said that the Sixth Circuit has affirmed the

principle that travel should be reimbursed at an attorney's usual rate.  Plaintiffs'

argument is not well-taken.

Courts have discretion to determine the reimbursement rate for travel time.

Judge Nugent has found that travel time is properly reimbursed at half an attorney's

usual rate.  Consequently, the travel time in this case should be reimbursed at that rate.

Although defendant's opposition brief refers to an attachment apparently

detailing the amount of travel time claimed and at what rates, no such attachment

exists.  The deduction for excess travel time will be included in the court's global

reduction in allowable appellate fees.

2.    *Whether Gupta's attendance at appellate argument is compensable*

Defendant argues that Gupta's attendance at appellate argument should not be

compensated because that attendance apparently made no contribution to plaintiffs'

case.  According to defendant, Gupta drove to Cincinnati on a separate day from her

co-counsel, did not argue the case, and sat in the gallery during argument.

Consequently, defendant concludes, "[I]t seems difficult to believe that Plaintiffs

themselves obtained any value in having her sit in the gallery to watch the argument."

Opposition at 10.

Plaintiffs respond that as Gupta was the individual most familiar with the case,

her presence at oral argument was invaluable.  Chandra's second declaration specifies

26

the nature of that contribution:

> She assisted me in preparing for oral argument and on catching him [sic] up on the record and anticipated arguments, at a cheaper billable rate than if I had prepared alone.  She and I had various discussions and communications related to the case while she was traveling.  As the billings reflect, she spent a huge amount of time on the case and we made a professional judgment that her presence at oral argument would be advisable and helpful, as there were many procedural issues that could have arisen that she would know the most about given the interplay between the two cases.  If the Court focused only on the merits, I might be fine, but if they focused on the procedural issues, then I might need Ms. Gupta.  Ms. Gupta's assistance was valuable, as the result adverse to the Secretary shows.  We could not travel together because Ms. Gupta was still working on preparation materials well into the night.  My schedule leading right up to oral argument was quite hectic, and I needed the time in Cincinnati the morning of the argument to review the record and prepare.  I could therefore not travel the morning of the argument.

Second Chandra Declaration at 4-5.  Had Gupta sat at the advocate's table with Chandra, the court could understand the necessity for Gupta's travel.  It would be most unusual for Chandra to expect to consult with someone in the gallery during oral argument.  As Chandra was able to consult with Gupta, presumably by cell phone, while Gupta was traveling and Chandra was not, plaintiffs fail to explain why Chandra required Gupta's in-person attendance and why Chandra could not have continued to consult with Gupta by telephone up to the time for oral argument.  Plaintiffs' reply, therefore, does not explain why it was necessary for Gupta to travel to Cincinnati to sit in the gallery.  Consequently, the costs associated with Gupta's attendance at appellate argument, *i.e.* $280.33 should not be compensated.

.A deduction for Gupta's participation in appellate argument will be included in the global reduction in plaintiffs' fees for appellate work.

27

3.    *Whether plaintiffs should be compensated for time spent correcting the appellate brief*

Defendant argues that plaintiffs should not be compensated for time spent correcting an initial appellate brief that was rejected for not conforming to the rules of the appellate court.  According to defendant, plaintiffs should not be compensated for correcting a problem that they created.

Plaintiffs offer no response to this argument, and the court regards them as having conceded the issue.  Defendant details billings showing that Gupta spent 20.3 hours, Chandra .2 hours, Screen 5.9 hours, Heydt .6 hours, and Zaranko 3.5 hours in working on a substitute brief or fixing problems with the original brief.  *See* Opposition at 10-11 and Exh. D.  Plaintiffs do not dispute defendant's estimate of the relevant hours.  Defendant does not calculate the amount of fees that should be deducted from plaintiffs' request, apparently believing that the court is charged with this task.  The court calculates the relevant amount as being approximately $9,000, and this will be included in the court's global deduction from plaintiffs' appellate fee request.

4.    *Whether plaintiffs should be compensated for fees paid to Mills and Hill*

Defendant also argues that as there was no fee agreement between plaintiffs and attorneys Mills and Hill, plaintiffs' attorneys should not be compensated for fees paid to those attorneys.  Plaintiffs reply that Mills and Hill made essential contributions to plaintiffs' appellate strategy and, on that ground, their fees are compensable, citing *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1251-52 (10th Cir. 1998), and *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205-06 (10th Cir. 1986).

28

The Sixth Circuit has not addressed the issue of whether the fees of consulting attorneys are compensable in fee-shifting cases.  The Tenth Circuit allows such fees only when the consulting attorney's contribution is not "merely comforting or helpful" but "is essential to proper representation."  *Mares*, 801 F.2d at 1206.

This court need not decide whether it should be persuaded by the Tenth Circuit's holding or whether the contributions of Mills and Hill were "essential to proper representation."  Chandra's letter outlining the details of his representation of plaintiffs leads to the conclusion that the contributions of Mills and Hill are *not* compensable.  Chandra is asking that Mills and Hill be compensated *as attorneys*.  The Chandra letter unequivocally specifies the following:

> You understand that this matter will be co-counseled between the Chandra Law Firm, LLC (with the matter to be led by me) and the law firm of Berkman, Gordon, Murray, and DeVan (with the matter to be led by Raymond Vasvari at that firm).  These firms will be dividing the fees in proportion to the value of the services performed by each law firm and as awarded by the Court or allocated in any settlement with Defendants.

Awarding attorney's fees to attorneys other than those at the Chandra Law Firm or the Berkman firm is contrary to the agreement under which the Chandra Law Firm and the Berkman firm undertook the representation.  For this reason, the court should not award attorney's fees to Mills ($1,890.00 claimed) and Hill ($2,362.50 claimed).

> 5.     *Whether plaintiffs seek and should be reimbursed for "issues not successful on appeal" and for seeking amici*

Defendant argues that plaintiffs should not be reimbursed for litigating issues that were not successful on appeal or for seeking *amici*.  Plaintiffs respond that there is no legal authority to support defendant's argument that unsuccessful litigation of the issues mentioned warrants not reimbursing the hours spent on those issues.

29

Defendant argues that plaintiffs should not be reimbursed for the hours spent litigating two issues on appeal:  (1) the motion and reply unsuccessfully seeking to have the appeal held in abeyance pending the outcome of *Kilroy* at the district court level, and (2) the opposition to a motion to intervene and plaintiffs' motion to quash the motion to intervene.  Defendant also argues that the time spent attempting to find *amici* to support plaintiffs' position in the litigation was excessive.[19]  Defendants provide no case law or statutory law to support their contention that litigating such unsuccessful issues or seeking *amici* is not compensable.

Plaintiffs cite *Hensley v. Eckerhart*, 461 U.S. 424 (1982), as rejecting defendant's contentions regarding the compensability of unsuccessfully litigated issues:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendants-often an institution and its officers, as in this case-counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974).  The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

---

[19]  Defendant argues in his opposition brief that all time devoted to seeking *amici* is not compensable.  Opposition at 12.  At oral argument, defendant modified his position to argue that the time spent with *amici* was excessive.  Tr. at 21.

reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  See *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974).  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

*Hensley*, 461 U.S. at 434-35 (footnotes omitted); *see also Deja Vu v. Metropolitan Gov't of Nashville and Davidson County, Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("Prevailing parties who obtain excellent results . . . are generally entitled to a 'fully compensatory fee' . . . [W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed . . . .") (citing *Hensley,* 461 U.S. at 435).

Plaintiffs raised a single claim at the trial and appellate levels:  that Ohio's law prohibiting Medicaid providers from contributing to the campaigns of the attorney general and county prosecuting attorneys was an unconstitutional violation of the First Amendment.  Plaintiffs were entirely successful in prosecuting that claim.  It is contrary to law, therefore, to reduce their fees because they were not successful on every theory they litigated in pursuing that claim.

As regards times spent in seeking *amici*, there is no Sixth Circuit opinion as to whether such time is compensable.  The only case in the circuit to address the question, *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 2008 WL 906031, at *22 (W.D. Mich. March 31, 2008), permitted the award of fees for time spent

31

seeking *amicus* briefs as reasonably necessary for the prosecution of plaintiff's case, after noting that the opposing party had also sought and obtained *amici*.[20]  "[T]he classic role of *amicus curiae* [consists of] assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration."  *Miller-Wohl, Co., Inc. v. Commissioner of Land & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982); *see also Alliance of Automobile Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 307 (D. Me. 2003) ("[T]he *amicus* provides supplemental assistance to existing counsel, or the *amicus* insures a 'complete and plenary presentation of difficult issues so that the court may reach a proper decision.'") (quoting *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974)).  As the role of *amicus* is, in part, to supplement the work of counsel for a party, seeking and coordinating *amicus* briefs would seem to be within the ambit of a counsel's responsibilities.

Plaintiffs eventually succeeded in obtaining six *amicus* briefs.  Whether those briefs were important in the appellate process is impossible to determine.  Again, however, the Supreme Court has determined that where plaintiffs have obtained excellent results, as they did here, the attorneys "should recover a fully compensatory fee" for "all hours reasonably spent on the litigation."  *Hensley*, 461 U.S. at 435.  Seeking *amicus* briefs to supplement plaintiffs' arguments was, at least, a reasonable appellate strategy.  Consequently, plaintiffs should be reimbursed for the fees associated with seeking *amici*.

Nevertheless, defendant's contention that at least some of the nearly 40 hours

---

[20]  No *amicus* briefs were filed on behalf of defendant on appeal in the present case.

32

devoted to *amici* was excessive has merit.  The court has included this excess in its
global reduction of plaintiffs' appellate fees.

> 6.    *Whether plaintiffs should be reimbursed for Chandra's stay in Cincinnati
>       the night before oral argument*

Defendant argues that Chandra's stay in Cincinnati the night before oral
argument was unnecessary and that the bill for $423.75 for staying in a hotel was
excessive.  Plaintiffs reply that staying in Cincinnati overnight gave Chandra time to
review his case immediately before argument and was consistent with the practice of
Cleveland civil rights attorneys participating in appellate argument in Cincinnati.
Plaintiffs also reply that the bill was unusually large because "no other hotel room was
available on that day in such proximity to the Courthouse."  Reply at 16.  While the
court agrees that staying overnight in Cincinnati is a reasonable strategic decision, the
failure to plan in advance or to stay at a less expensive hotel a greater distance from
the courthouse is not.  For this reason, a reduction of 25% (*i.e.* $105.94) for the cost of
Chandra's hotel is warranted.

> 7.    *Whether plaintiffs' request includes excessive attorneys' fees for the
>       appeal*

Finally, defendant argues that plaintiffs' counsel expended excessive hours for
the appeal and notes, among other things, that counsel expended 379.8 hours for the
appellate briefs.  Plaintiffs do not challenge defendant's estimate of the number of
hours billed for appellate briefing.  Rather, plaintiffs respond that defendant introduced
a new argument at the appellate level, a challenge to plaintiffs' standing, and that
plaintiffs had to respond to that argument and critique the opinion of the district court--
and not merely repeat arguments they had already made.

The total amount of time spent during the appellate process, as reflected in the chart attached to this Report and Recommendation (which extracts information from the bills submitted by plaintiffs' counsel), is an astounding 662.44 hours, resulting in fees in the amount of $243,888.50.  Although plaintiffs' response has some merit, the hours expended for the appeal when the central issues already had been briefed not merely once but *twice* at the district court level, upon a motion for an injunction and upon summary judgment, is clearly excessive.  This, too, has been considered in the court's global reduction of appellate fees.

>    8.    *Summary and recommendation*

Plaintiffs' billing for appellate work includes some items which should not be reimbursed, such as Gupta's attendance at appellate argument, time spent correcting the appellate brief, and fees paid to Mills and Hill.  It also includes billings that are excessive, such as reimbursement for travel time, hours devoted to handling amici, and attorneys' fees for all briefs filed in the appellate court.  Consequently, after removing Mills' and Hill's fees, plaintiffs' request for reimbursement of all appellate work totaling $243,888.50 should be reduced by 25%, *i.e.* by $60,972.13.

E.    *Whether plaintiffs have billed for work that was not necessary*

Defendant contends that plaintiffs' attorneys have billed for excessive work that was not necessary.  According to defendant, this includes:  (1) billing 337.9 hours drafting a 41-page motion for a preliminary injunction, including an excessive 100.25 hours researching the legislative history of § 3599.45; (2) billing 204.15 hours for discovery consisting of a single deposition but many hours seeking the same information from many different pharmacies and companies; (3) generally billing

34

excessive numbers of hours in briefing issues in the case, including 379.8 hours on appellate court briefs after already briefing the issues at the district court level. Defendant also contends that the court should reject as excessive or unclear costs for copying, for Westlaw research, and for Chandra's stay in Cincinnati the night before oral argument.

As regards the billing for preparing a motion for a preliminary injunction, that reimbursement for the allegedly-excessive hours devoted to researching legislative history has already been excluded because all research on legislative history occurred before September 2, 2010, when plaintiffs signed the contingent fee agreement.[21] *See* Opposition, Exh. H (detailing plainitffs' billing for time spent researching legislative history). As those hours should be struck for other reasons, defendant has little remaining basis for challenging the hours billed for preparing a motion for a preliminary injunction.

Defendant also contends that plaintiffs over-billed for discovery. Defendant notes that plaintiffs took a single deposition but spent many hours investigating which corporations were Medicaid providers and their number of shareholders. Plaintiffs respond that these matters were essential to their overbreadth argument and that the court itself had criticized plaintiffs for failing "to demonstrate the number of limited partners or minor shareholders of corporations who are subject to the reach of § 3599.45." Report and Recommendation, October 12, 2010, doc. no. 17, p. 25; *see also*

---

[21] The research on legislative history consisted mostly of research of non-legal documents, such as newspapers. Plaintiffs have not justified why this type of research should be billed at attorneys' rates.

35

p. 27 ("The record before the court is silent as to how many Medicaid providers are limited partnerships or publicly held corporations.  This much, at least, is essential before the court can even begin to estimate whether the number of *de minimis* owners of Medicaid providers is 'substantial.'"), and Transcript of Proceedings, October 7, 2010, pp. 74-77 (detailing court questioning regarding the number of medicaid providers that were publicly held and the number of persons who were shareholders in such corporations).

Plaintiffs argue that even though the court noted the lack of evidence pertaining to the number of Medicaid providers and the number of owners of shares in such providers in Ohio was fatal to the plaintiffs' overbreadth argument, defendant unreasonably declined to stipulate that certain publicly-traded corporations were Medicaid providers, or that there would be hundreds of thousands of owners of such publicly-traded corporations, or that there would be a significant number of owners of such publicly-traded corporations.  *See* tr. at 12-14.

In this court's view, the overbreadth argument, although not addressed by the Sixth Circuit or Judge Nugent, was a reasonable alternative argument to pursue. Defendant has a much-reduced ground for complaint that work is excessive if such work follows from defendant's failure to make a reasonable stipulation.[22]  Nevertheless, the expenditure of more than 270 hour of time totaling $97,227.75 fees, as reflected int the chart attached to this Report and Recommendation containing information extracted from plaintiffs' bill, to discover whether certain entities are Medicaid providers and

---

[22]  The billing does reflect that plaintiffs' counsel expended a significant amount of time on this issue before requesting a stipulation.

36

whether those providers had substantial numbers of shareholders is clearly excessive and incredibly inefficient, regardless of whether the Medicaid providers offered some resistance to the subpoenas.  This discovery also includes a significant amount of time expended on the subpoena of information from Attorney General Michael DeWine (which was quashed) on a largely peripheral issue.  For these reasons, all fees related to third party subpoenas (totaling $97,920.81) should be reduced by 25% (*i.e.* by $24,306.94).[23]

Defendant asserts that plaintiff's bill includes "unclear entries for copy expenses and Westlaw research without any detail about what the Plaintiffs' [sic] were copying or researching."  Opposition at 18.  Defendant does not cite where such entries are to be found or further describe them.  In the absence of anything more than a conclusory assertion that the entries were inadequate, defendant's argument is not well-taken.

F.    *Whether plaintiffs engaged in billing practices that should result in a substantial reduction in their fees*

Defendant asserts that plainitffs engaged in a variety of billing practices that should cause the court to substantially reduce the fees and costs awarded.  According to defendant, these include block billing, billing in quarter-hour increments, failing to make contemporaneous accounts of work performed, and apparently duplicative billing with work done in *Kilroy*.  Plaintiffs respond that there is no prohibition against block billing that is sufficiently detailed, quarter-hour billing is both permitted and reasonable,

---

[23]  Defendant also argues that plaintiffs have billed an excessive number of hours in briefing this case.  In particular, defendant notes that plaintiffs billed 379.8 hours for preparing on appellate court briefs after already briefing those issues at the district court level.  The issue has been addressed in section D.

all work performed was recorded contemporaneously, and the billing in this case does
not duplicate work done in *Kilroy*.

>        1.        *Block billing and billing in quarter-hour increments*

Defendant argues that although the Sixth Circuit permits block billing, courts
have reduced hours block-billed by 20-25%, citing *Chad Youth Enhancement Center,
Inc. v. Colony Nat. Ins. Co.*, 2010 WL 4007300 (M.D. Tenn. Oct. 12, 2010), and *Heath
v. Metropolitan Life Ins. Co.*, 2011 WL 4005409 (M.D. Tenn. Sept. 8, 2011).  Plaintiffs
respond that *Chad* was withdrawn by the Sixth Circuit and is no longer good law[24] and
that the court in *Heath* was more concerned with vagueness than with block billing.

According to the Supreme Court, "[C]ounsel . . . is not required to record in great
detail how each minute of his time was expended," but "should identify the general
subject matter of his time expenditures."  *Hensley,* 461 U.S. at 437 n.12.  The Sixth
Circuit has held that block billing is not contrary to an award of reasonable attorney's
fees pursuant to a fee-shifting statute.  *Pittsburgh & Conneaut Dock Co. v. Director,
Office of Workers' Compensation Programs*, 473 F.3d 253, 273 (6th Cir. 2007).  Where
an attorney provides "detailed descriptions of his activities, although not further
described by time spent on each individual activity" that is sufficient.  *Id.*  "The key
requirement for an award of attorney fees is that '[t]he documentation offered in support
of the hours charged must be of sufficient detail and probative value to enable the court
to determine with a high degree of certainty that such hours were actually and
reasonably expended in the prosecution of the litigation.'"  *Imwalle*, 515 F.3d at 553

---

[24] Plaintiffs are correct.  *See Chad Youth Enhancement Center, Inc. v. Colony Nat.
Ins. Co.*, 2012 WL 1059404, at *5 (6th Cir. March 30, 2012).

(quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495,

502 n.2 (6th Cir. 1984)).  In addition, the Sixth Circuit affirmed an award of fees in a

case in which "the entries made by . . . counsel were sufficient even if the description

for each entry was not explicitly detailed."  *McCombs v. Meijer, Inc.,* 395 F.3d 346, 360

(6th Cir. 2005) (citing with approval *Anderson v. Wilson,* 357 F. Supp. 2d 991, 999 (E.D.

Ky. 2005) (holding that counsel satisfied their burden to provide sufficiently detailed

billing records by providing "itemized statements describing the subject matter, the

attorney, the time allotment, and the charge for all work done on Plaintiffs' case")).

Moreover, the Sixth Circuit added the following:

> This court held in *Perotti v. Seiter,* 935 F.2d 761, 764 (6th Cir. 1991), that
> the party seeking fees has "the burden of providing for the court's perusal a
> particularized billing record."  Once the prevailing party provides such a record,
> however, "conclusory allegations that the award was excessive and that . . .
> counsel employed poor billing judgment . . . do not suffice to establish that there
> was error . . . ."

*Imwalle,* 515 F.3d at 553.

In the present case, plaintiffs provided a 121-page invoice of its billed attorney's

fees and a nine-page invoices of its billed expenses.  Generally, each entry includes the

date, the amount of time spent, the amount billed (usually in quarter-hour increments),

and the subject or subjects of the work billed.[25]  This is sufficient to satisfy the

requirements of the Sixth Circuit for specificity in recording attorneys' time and work.

---

[25]  As noted earlier, when work which may be reimbursed is block-billed with work
which may not be reimbursed, any doubt as to how much time should be reimbursed when
just one activity in the block is challenged is read against the billing attorney, even in the
presence of an affidavit detailing the amount of time spent on each included task.  Thus,
counsel who fails to give further detail about the amount of time expended on different
tasks in his billing does so at his peril.

Thus, if defendant believes that particular entries are inadequate, defendant must state with specificity which entries are inadequate and why they are inadequate.

Defendant does not state either which entries are inadequate or the nature of the inadequacies in plaintiffs' entries.  Defendant's complete critique of the inadequacy of plaintiffs' billing is as follows:

> The billing records also contain numerous entries that are not sufficient to allow recovery for the hours claimed.  There are numerous billing entries in the fees submitted that are simply not sufficient to allow the Plaintiffs' attorneys to bill for those hours.  As a result of the lack of specificity in those entries, this Court should simply reject those hours.

Opposition at 15.  These are conclusory allegations which "do not suffice to establish that there was error . . . ."  *Imwalle*, 515 F.3d at 553.  They are not sufficient to challenge plaintiffs' billing as providing insufficient detail in this case.

   2.    *Contemporaneous recording of work performed*

Defendant also contends that plaintiffs failed to record their work contemporaneously.  Plaintiffs deny this and assert that all of their attorneys record their work contemporaneously.

Defendant cites about two dozen entries in plaintiffs' fees invoice as problematic.  Twenty of these entries are cited as bearing two dates rather than one, a date in regular, dark ink in the normal position and a date in light grey ink immediately below that date.  A few entries are cited as inconsistent with other facts in the record or, in one case, recording more than 24 hours' work in a single day.  *See* Opposition at 15-17.  Plaintiffs respond that entries bearing more than one date are the result of a glitch in the computer program that generates the invoice and that the date in dark ink in the normal position is the correct date for the work done.  *See* Second Chandra Declaration

40

at 7.  Plaintiffs further assert that once the dates in the normal position are taken as the correct date, there was no billing for more than 24 hours work in a single day.  *See* Gupta Declaration at 2.  Plaintiffs attribute the remaining three discrepancies to errors of fact or typographical errors.  *See* Second Chandra Declaration at 3.

The court accepts the sworn testimony of Chandra regarding the nature of the discrepancies in plaintiffs' invoice.  Moreover, the explanation seems reasonable, and that there might be several errors in an invoice 121 pages long is unsurprising.  Defendant's argument regarding the alleged failure of plaintiffs to record their work contemporaneously is not well-taken.

    3.     *Alleged duplicative billing with work done in Kilroy*

In addition to alleging that certain hours were double-billed in both this case and *Kilroy*, as discussed earlier, defendant also argues that, generally, the work billed in this case apparently duplicates work billed in *Kilroy*.  Defendant's argument is as follows:

> Interestingly, Plaintiffs claim that they spent 2037.7 hours working on this case and have also submitted billing records for a separate case in the Southern District of Ohio (Kilroy v. Husted Case No. 2:11-cv-145) in which they again claimed that RC 3599.45 was unconstitutional.  The Plaintiffs' attorneys purport to have spent another 1734.7 hours working on the Kilroy matter, and claim some of those fees in this case.  Thus, between the two cases, the Plaintiffs have claimed that their lawyers spent 3772.4 hours working on these cases alone.  If a single attorney were to bill 40 hours a week, that lawyer would have had enough work to keep her busy for just shy of 95 full weeks, or ten weeks shy of two full years.

Opposition at 17-18.

Plaintiffs have conceded that a small amount of work was billed in both cases and agree that $164.00 should be deducted from plaintiffs' fee request for work done in *Kilroy* and improperly billed to the present case.  *See* section C.1. *supra*.  Otherwise,

41

plaintiffs respond that the great majority of the hours spent in *Kilroy* were spent not on the merits of § 3599.45 but on defendant's "belated claims of Eleventh Amendment immunity and mootness."  Reply at 19.  Plaintiffs deny that any of the time billed in this case duplicates time billed in *Kilroy*.  Plaintiffs support this response with the invoice for the fee billing in *Kilroy* and the declaration by Gupta.  *See* Invoice to John Kilroy, Motion, Exh. 1D; Gupta Declaration at 4.  A cursory examination of the Kilroy invoice convinces the court that, indeed, a great deal of time was spent in responding to arguments made by defendant relatively late in the case challenging subject matter jurisdiction and standing.

There is no convincing evidence that plaintiffs billed for the same work both in this case and in *Kilroy*.  While the number of hours billed might raise questions as to the efficiency of plaintiffs' attorneys, they do not raise any questions about their integrity.

IV.

For the reasons given above, plaintiffs' costs and fees should be awarded after the following deductions are made from plaintiffs' request:

1. $100,183.00 for exploratory work performed between July 1, 2010 through September 2, 2010, prior to plaintiffs' signing the fee agreement;

2. $1,164.13 for costs incurred prior to September 2, 1010;

3. $10,463.75 to account for the reduced rate for work performed by Screen;

4. $164.00 for work done in *Kilroy* and improperly billed to the present case;

5. $1,120.00 due to the imprecision in block billing when attempting to account *post hoc* for time spent talking to the press;

42

6.      $4,252.50 representing all attorneys' fees requested for Mills and Hill;

7.      $24,306.94 to reflect an across-the-board reduction of 25% for discovery related to third parties;

8.      $60,972.13 to reflect an across-the-board reduction of 25% for appellate work; and

9.      $386.77 due to unnecessary costs incurred as a result of Ms. Gupta's travel to Cincinnati ($280.83) and the excessive cost of Mr. Chandra's hotel room in Cincinnati ($105.94).

Accordingly, it is recommended that Plaintiffs be awarded a total of $454,635.53 in fees and $6,442.03 in costs for this litigation.


Date:  February 12, 2010                              /s/ Nancy A. Vecchiarelli
                                                     United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**