UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


Arthur Lavin, *et al.*,                     )          Case No. 1: 10 CV 1986
                                            )
                Plaintiffs,                 )          JUDGE DONALD C. NUGENT
vs.                                         )
                                            )
Jon Husted, in his official capacity        )          MEMORANDUM OPINION
as Ohio Secretary of State,                 )          AND ORDER
                                            )
                Defendant.                  )


        This matter is before the Court on the Report and Recommendation of Magistrate Judge

Nancy Vecchiarelli (ECF #127) on the Plaintiffs' motion for attorney's fees in the amount of

$657,652.75 and expenses and costs in the amount of $7,792.93. (ECF #97) In her Report and

Recommendation, Magistrate Judge Vecchiarelli proposes that the Plaintiffs' Motion for fees

and costs be granted with the following deductions:

        1) $100,183.00 for exploratory work performed between July 1, 2010 through

September 2, 2010, prior to plaintiffs' signing the fee agreement;

        2. $1,164.13 for costs incurred prior to September 2, 1010;

        3. $10,463.75 to account for the reduced rate for work performed by Screen;

        4. $164.00 for work done in *Kilroy* and improperly billed to the present case;

        5. $1,120.00 due to the imprecision in block billing when attempting to

account *post hoc* for time spent talking to the press;

        6. $4,252.50 representing all attorneys' fees requested for Mills and Hill;

        7. $24,306.94 to reflect an across-the-board reduction of 25% for discovery

related to third parties;

8. $60,972.13 to reflect an across-the-board reduction of 25% for appellate work; and

9. $386.77 due to unnecessary costs incurred as a result of Ms. Gupta's travel to Cincinnati ($280.83) and the excessive cost of Mr. Chandra's hotel room in Cincinnati ($105.94).

In sum, Magistrate Judge Vecchiarelli recommends that Plaintiffs be awarded a total of $454,635.53 in fees and $6,442.03 in costs for this litigation. Both Plaintiffs and Defendant have filed objections to the Report and Recommendation and have both filed Responses to the others' objections.[1] Plaintiffs have further filed a Reply in support of Plaintiffs' Objections. In addition, a group of attorneys who perform contingency and/or fee-shifting work have filed a Motion for Leave *Instanter* to File an Amicus Curiae Brief in support of Plaintiffs' Objections to the Report and Recommendation.[2]  Specifically, Plaintiffs object to all of the Magistrate Judge's cuts except for cuts of $45,054.69[3] which they do not contest. Plaintiffs ask this Court to award total fees in

---

[1]

Prior to filing their Objections to the Report and Recommendation, Plaintiffs filed a Motion for Reconsideration of Part III of the Report and Recommendation.  Magistrate Judge Vecchiarelli denied that Motion as being procedurally inappropriate.

[2]

The Motion for Leave to file *Instanter* (ECF # 133) is granted.  The Court has reviewed the brief in connection with the other filings in this action.

[3]

Plaintiffs do not elucidate how they arrived at the specific amount of $45,054.69 in uncontested cuts made by Magistrate Judge Vecchiarelli, except to say that they do not dispute cutting the time charges related to correction and re-submission of their first appellate merit brief that was required by the Sixth Circuit Court of Appeals.

the amount of $612,598.06 and costs of $7,606.16.[4] Defendant objects to the Report and

Recommendation because the recommended reductions do not go far enough to bring Plaintiffs'

fee request within the bounds of reasonableness.  Defendant contends that the facts of this case

warrant a complete denial of fees, or at a minimum, significant further reductions.

### Factual and Procedural Background

Plaintiffs, who are Ohio physicians and Medicaid providers[5], filed this action on

September 3, 2010, seeking a declaratory judgment that Ohio Rev. Code § 3599.45 violates the

First and Fourteenth Amendments to the United States Constitution and an injunction barring

Defendant[6], the Secretary of State, from enforcing § 3599.45 against candidates for attorney

---

[4]

Plaintiffs also filed a bill of costs (ECF #99) pursuant to Fed. R. Civ. P. 54(D)(1), Fed. R. App. P. 39(E), and 28 U.S.C. §§ 1920, 1921, 1923, 1914. The costs set forth in the Bill of Costs mirror the costs and expenses sought in Plaintiffs' Motion for Attorneys fees and Expenses. (ECF #97).  As all of those expenses have been addressed by the Magistrate Judge and this Court, Plaintiffs' Bill of Costs (ECF #99) is now moot and will be terminated.  Plaintiffs' apparently do not object to the Magistrate Judge's deduction of Attorney Gupta's travel time for oral argument in the Sixth Circuit or her 25% reduction of Mr. Chandra's hotel bill the night before oral argument.  Thus, Plaintiffs' new request for fees is for $7,606.16.

[5]

The names of the Plaintiffs are Arthur Lavin, M.D., Jason Chao, M.D., Michael Devereaux, M.D., Patricia J. Kellner, M.D., Jerone Liebman, M.D., Eric R. Schreiber, M.D., Constance D. Magoulias, M.D., Peter A. Degolia, M.D., and Nathan R. Beachy, M.D.  All of the Plaintiffs claim to be Ohio Medicaid providers who serve Medicaid patients, as authorized by the Ohio Department of Job and Family Services. (Compl. at ¶¶3-11) From Plaintiffs' declarations, it appears that only Dr. Lavin has an ownership interest in a Medicaid provider.  Specifically, Dr. Lavin is the 100% owner of Advanced Pediatrics, which is a Medicaid provider. (2nd Lavin Dec. at ¶2)

[6]

The current Secretary of State Jon Husted, was substituted for Jennifer Brunner, who held the office of Secretary of State when this action was filed. The Secretary has been sued in his official capacity, as the Ohio Secretary of State is the chief elections officer of Ohio and is charged with enforcing the State's election laws. Ohio Rev. Code § 3501.04.

general or county prosecutor to whom Plaintiffs wish to make campaign contributions. Plaintiff Lavin asserts that he contacted the campaign office of Ohio Attorney General Richard Cordray in July 2010[7] to ask how Plaintiffs might make a donation to his re-election campaign.  The campaign office informed Dr. Lavin that it could not accept campaign donations from Plaintiffs under the provisions of R.C. § 3599.45.

　　　　While the exact origin of this action is hazy, based upon the affidavits and filings submitted to the Court, it appears that Dr. Lavin knew Attorney Chandra; that some discussions regarding § 3599.45 may have occurred in April, 2010, at least between counsel; and, that counsel began billing time in June 2010.[8] As of July 1, 2010, Dr. Lavin allegedly had contact with the Chandra Law firm, who purportedly began a preliminary investigation regarding whether §3599.45 was constitutional.  This action was filed months later seeking immediate injunctive relief before the November 2010 elections. Magistrate Judge Vecchiarelli held a hearing on Plaintiffs' Motion for a Preliminary Injunction and issued a Report and Recommendation advising that the injunction be granted.  After objections were complete, this Court declined to adopt the Report and Recommendation.  The parties, mainly Plaintiffs,

---

[7]

This was 1-2 months after counsel began billing time in this case. (ECF 97-3; 97-9)

[8]

It appears from billing records filed with this Court, that counsel began work on this issue in June, well before Dr. Lavin asserts that he contacted the Cordray campaign.  This could lead to a somewhat cynical conclusion that counsel was merely scouring through campaign laws hoping to find an old one such as the statute at issue here to challenge in the hope of raking in overstated fees.  Indeed, only one of the named plaintiffs even attempted to make a belated inquiry into donation, and that was *only after* speaking with counsel, raising the inevitable speculation that this action was derived mainly by counsel in order to garner fees and not from Plaintiffs' frustrated desire to make a campaign contribution to Mr. Cordray.

4

conducted extensive discovery, much of it of questionable value, as the claim made by Plaintiffs is a facial challenge to the statute, and filed cross motions for summary judgment.  Defendant's Motion for Summary Judgment was granted and Plaintiffs' was denied.  Plaintiffs appealed to the Sixth Circuit.  Plaintiffs' counsel claimed to have expended hundreds of hours on the appeal, including: identifying and coordinating with amici; producing and endlessly editing merit briefs, including correcting and re-filing the first merit brief that was rejected by the appellate court for non-conformance with its rules; attending moot court practices for the oral argument; and, otherwise prepping for argument. The Sixth Circuit eventually reversed this Court's ruling and remanded the case for entry of judgment in favor of Plaintiffs.  Thereafter, on September 11, 2012, this Court entered judgment in favor of Plaintiffs, declared §3599.45 unconstitutional in its entirety, and enjoined enforcement of the statute. As Plaintiffs were the prevailing parties they now move pursuant to 42 U.S.C. § 1988 for attorneys' fees, expenses, and costs.

**Discussion**

Section 1988 provides in relevant part that a court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, in any action brought to enforce a provision of § 1983. 42 U.S.C. § 1988(b). The purpose of § 1988 is to ensure "effective access to the judicial process' for persons with civil rights grievances. " *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983)(citations omitted.)  Nevertheless,  "Congress and the Supreme Court have made it abundantly clear that the aim of [§ 1988] 'is not for the purpose of aiding lawyers.  The purpose of th[e] bill is to aid civil rights.'" *Binta B. v. Gordon*, 710 F.3d 608, 612 (6th Cir. 2013). (citations omitted).  As such, it is the goal of the court to assure that lawyers are fairly compensated for prevailing in civil rights actions, especially on

5

behalf of plaintiffs who could not otherwise afford to pay an attorney to pursue their claim.  That does not mean, however, that lawyers should expect a windfall; to bill excessive hours beyond what a paying client would permit; or, to be paid at a rate that exceeds the norm in their locality.  That is particularly true in cases such as this one where the Defendant is a state or local government whose taxpayers will ultimately bear the burden of any fee award and the named Plaintiffs are medical doctors presumably abundantly capable of paying for representation. This is especially true where, as here, the Plaintiffs sought to make political monetary contributions to an elected official who was barred by statute from accepting contributions from any entity that the elected official had regulatory authority over.

In order to properly review and analyze a fee request under § 1988, this Court must review the fee filings and all facts related to the fee filing, as well as the legal rationale set forth in the fee sharing statute and the many cases interpreting the statute in order to determine first, whether a fee award is appropriate in the given circumstances and second, what amount is reasonable.  The statute and corresponding case law interpreting this Court's responsibility, contemplates a fee application that is, at a minimum, accurate and trustworthy.[9]

---

[9]

Here, as will be discussed in greater detail at a later point in this Opinion, the fee application falls woefully short of being either accurate or trustworthy. And, as a result, the Defendant; the Magistrate Judge; and, this Court have been obligated to expend much more time and effort to decipher and study the application than would have been required with the submission of a fair and accurate fee application.  For instance, Plaintiffs' counsel failed to even add up the number of hours for each individual attorney they were requesting fees for.  Rather, they submitted 121 pages of raw billing data without further grouping or completion of sub-totals of hours expended by each attorney or paralegal. As noted by Magistrate Judge Vecchiarelli, the Defense counsel spent considerable time and effort to add the numbers of hours billed by each person in Plaintiffs' extensive filing.  Magistrate Judge Vecchiarelli thereafter, made additional exhaustive and time consuming effort to analyze of the raw information provided by Plaintiffs.  Finally, this Court has literally spent weeks trying to decipher the raw data submitted by Plaintiffs.

Moving first to the initial determination of whether this Court should exercise its discretion and award attorneys fees in this instance, the Defendant argues that the facts and circumstances of this case warrant a complete denial of fees.  Specifically, Defendant asserts that this case constitutes one of the rare situations envisioned by the Supreme Court in *Hensley v. Echart*, 461 U.S. 424, 429 (1983), where "special circumstances would render an award [of attorneys' fees] unjust." Specifically, Defendant argues that Plaintiffs' conduct in billing $101,183.00 for work done prior to the signing of a written fee agreement contravenes the clear mandate of Rule 1.5(c)(1) of the Ohio Code of Professional Conduct.[10] Defendant further asserts that Magistrate Vecchiarelli's recommendation to exclude all hours spent prior the "commencement of the Chandra Law Firm's or Berkman's agreement with plaintiffs to undertake this litigation," while correct, is not sufficient to penalize Plaintiffs' counsel for their unprofessional conduct or to deter similar conduct in the future. When coupled with the numerous other defects in Plaintiffs' counsels' fee request such as the errors in billing for time spent on a different case; billing for time spent on tasks that are not reimbursable such as talking to the press; charging excessive billing rates; engaging in imprecise block billing; and, seeking fees for an unreasonable amount of hours; Defendant concludes that these collective errors cast

---

The level of effort required to analyze this particular fee request is entirely beyond what the statute contemplates.

[10]Ohio Prof. Con. R. 1.5(c)(1) provides:
Each contingent fee agreement shall be in writing signed by the client and the lawyer and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the payer in the event of settlement, trial, or appeal; litigation and other expense to be deducted before or after the contingent fee is calculated.  The agreement shall clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party.

7

doubt on the credibility of Plaintiffs' counsels' billing records and make a compelling case for a complete denial of fees.

While Defendant has highlighted the defects that the Magistrate Judge and this Court recognize in Plaintiffs' counsels' fee request, a complete denial of fees based upon a finding of special circumstances is a stringent sanction, "reserved for only the most severe situations." *Project Vote v. Blackwell*, Case No. 1:06 CV 1628, 2009 WL 917737 at *4, (N.D. Ohio Mar. 31, 2009). Further, in the Sixth Circuit, the non-prevailing party bears the burden of making a "strong showing" of special circumstances sufficient to warrant denial of fees and costs to a prevailing party. *Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson Cty*, 421 F.3d 417, 422 (6th Cir. 2005) (citation omitted). This is not a light burden. Indeed, the Sixth Circuit noted in *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010) that "we have never (to our knowledge) found a special circumstance justifying the denial of fees." In *Project Vote*, the Defendant argued that the prevailing plaintiffs' request for fees and costs should be denied in its entirety, because the fee application—both on its face and with respect to repeated specific instances of double billings, inflated hours, improper charges, and exorbitant and unsubstantiated proposed hourly rates—should shock the conscience of the Court. The Court found that a complete denial of the fee request was inappropriate because plaintiffs' counsel had obtained an excellent result in a short time frame and determined that a significant reduction in the fee request was sufficient in those circumstances. *See also*, *Harkless v. Husted*, Case No. 1:06 CV 2284, 2011 WL 2149179 at *12 (N.D. Ohio Mar. 31, 2011) (defendants' request that court completely deny fees was not frivolous in the circumstances as many of plaintiffs' counsels' billing practices and the sheer size of the request raised questions, however defendant did not

meet burden of making a strong showing of "special circumstances" sufficient to justify denial of an award of any fees and costs.)

After very careful review, the Court narrowly agrees with Magistrate Judge Vecchiarelli in finding that the "special circumstances" identified by Defendant in this case do not justify a complete denial of fees and costs in this instance.  Instead, any violation of Rule 1.5(c)(1) as well as the other deficiencies in the fee application have been adequately addressed by the significant reductions imposed by Magistrate Judge Vecchiarelli and then by this Court.  The end result is a fee which this Court has determined is "reasonable" in these circumstances.

Moving on to the second part of the Court's determination, *i.e.*, what is a reasonable fee, Magistrate Judge Vecchiarelli's Report sets forth the appropriate "lodestar" analysis and examines whether the hours sought by counsel, as well as the rates sought were reasonable. The Report further analyzes the twelve factors identified in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) to determine whether the final fee award should be adjusted upwards or downwards.  Magistrate Judge Vecchiarelli concluded that the *Johnson* factors "do not clearly warrant either an increase or a decrease in the lodestar amount except insofar as the court determines that the hours billed and the rates charged were reasonable." (ECF #127 at 9) Using the Report and Recommendation as a starting point, this Court has also carefully examined the time keeping records submitted by Plaintiffs and has made its own lodestar analysis, including finding "reasonable" attorney rates as well as the number of hours that would be reasonable to prosecute this action.

The primary goal for the Court is 'reasonableness' under all the facts and circumstances fairly presented to the Court.  "The primary concern in an attorney fee case is that the fee

awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)(citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). Courts have also held that the hourly rate awarded should not be greater than required to encourage competent and experienced lawyers to undertake the representation, and should not produce a windfall to the attorneys. (*Id.*). This consideration is especially important when the Defendant subject to the fee-shifting award is a governmental entity. In such cases the cost of attorney's fees will be borne by the government, and therefore, in actuality by the taxpayer. Therefore, it is essential that the reasonableness determination limits the fees awarded, both in hours and rates, in a manner that ensures the prevailing attorneys are sufficiently compensated for the necessary and reasonable work they performed, without reaping a windfall from premium pricing, overstaffing, or overzealous representation.

In order to determine a rate that is consistent with the goals of the fee-shifting statute, while remaining mindful that the fees assessed will in the end be paid by all taxpayers, the Court relied on the Ohio Bar Association's report entitled "The Economics of Law Practice in Ohio: Desktop Reference for 2010" (hereinafter "Economics of Law"). This report was generated to "help in developing sound and equitable hiring and compensation policies" within Ohio. (Economics of Law, at 3). The Court finds that a rate based on the median fees charged by civil lawyers in the same geographic vicinity, adjusted for the size of the relevant law firm and the experience levels of the billing attorneys should satisfy the goal of providing reasonable fees that would be accepted by a sufficient number of competent, experienced lawyers in the field, thereby ensuring that civil rights litigants would have effective access to the judicial process.

The median hourly billing rate for all reporting civil attorneys was $200/hour, in 2009, with the median level of experience for reporting civil attorneys being eighteen years in practice.

(*Id.* at 4).  Two hundred dollars an hour was also the median billing rate for a partner in a firm with 2-7 partners.  (*Id.* at 24).  Associates in a 2-7 partner firm had a median billing rate of $175/hour.  (Id. at 24).  The median hourly rate for attorneys in suburban Cleveland was $200/hour, while the Greater Cleveland area had a slightly higher median at $210/hour.  Although there was no separate category for billing rates of attorneys in the civil rights practice area, the report did compare the average salaries for attorneys in these categories to the average salaries of other practitioners.  For attorneys whose primary field of law is civil rights practice, the median annual income for full-time attorneys was $79,500, or about 12% lower than the reported salary of all full-time attorneys. (*Id.* at 13).  This differential remained the same among lawyers in the top 25th percentile of the salary range.  However, civil rights lawyers who had an income in the top 5th percentile, had an approximately 37%  higher salary than the average full-time practitioner in the same salary percentile.  (*Id.* at 17).  The mid-range billing rates for para-legals with five or more years of experience was between $81 and $90.  (*Id.* at 25, 27).  Further, up to 38.9% of reporting firms with 3-6 attorneys did not bill separately for the time spent by legal assistants.  (*Id.* at 30).

The fees sought for the partners in this case exceed the rates charged by civil attorneys even in the 95th percentile of every category of firm size and experience level in Ohio as reported in the Economics of Law report.  (*Id.* at 23).  Mr. Screen's rate exceeds every single billing rate listed in the report, and Mr. Chandra's rate matches up with the top 95th percentile of fees charged in the greater Cleveland area, with Cleveland being the highest charging city listed in Ohio.  Ms. Gupta's rate also falls within the top 95th percentile of rates charged for someone with her years of experience.  The Court does not question Mr. Chandra's representation that he

11

bills these rates to paying clients, or that there may be other attorneys in the Cleveland area who charge similar fees.  However, the fee-shifting provisions of Section 1988, do not guarantee that attorneys will be able to recover fees in the highest conceivable range charged in their geographic vicinity, nor does it guarantee litigants that they will have free access to the highest paid lawyers in their city.[11]  Rather, a reasonable hourly rate is based upon the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.[12]  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

It also bears noting, that lawyers who accept court appointments in criminal cases, and are paid by the government to fulfill a constitutional duty to represent the accused, are currently being paid only $125.00 per hour regardless of their level of experience, skill or reputation, or the difficulty of the case.  Even in death penalty cases, the most dedicated and experienced attorneys, taking on the most profound responsibility known in the law, are limited to a maximum hourly rate of $178.00.  (*See*, Criminal Justice Act (CJA) as amended by the Judicial Administration and Technical Amendments Act of 2010, enacted May 27, 2010).  In addition, each criminal case involving court appointed (and taxpayer funded) attorneys is subject to a case limit.[13]  The most generous limit applies to felony representations, which are capped at $9700.00.

---

[11]This is especially true when the question being litigated is of only moderate difficulty.

[12]

  In this case, there is no evidence that Mr. Chandra's skill, experience, and reputation exceed that of the attorneys who reported their fees in the Economics of Law report, nor is there any indication that this firm was chosen based on their stellar reputation in the field of election law.  Rather, the lead Plaintiff, Dr. Lavin stated in his declaration that he knew Mr. Chandra through friends of friends, and through community activism work.

[13]

  Exceptions may be made with proof that the case is "extended and complex" as defined in Section 230.23.40 of the Guidelines for Administering CJA and Related Statutes.  This

Appeals are also capped at $6900.00.  (*Id.*).  The contrast between these cases which may literally mean the difference between life and death, the most thorough deprivation of freedom sanctioned under the law, and the instant case is as stark a difference as black and white or good and evil.  It is unfathomable to think that a persons' life and liberty can be defended at a total cost, including appeals, of under $17,000.00, while the attorneys in this case have sought in excess of $660,000.00 from the government for a facial challenge to a thirty year old law that was enacted to prevent corruption in election campaigns. Nonetheless, the Court remains bound to consider the reasonableness of the fee request in the context of fees charged by other civil lawyers in this geographic community.

In this case, based on the level of difficulty of the case, and the skill needed to competently perform the legal service requested, and the billing rate ranges reported in the 2010 Economics of Law report,[14] the Court finds that the appropriate and reasonable rates to be awarded for each billing attorney are as follows:

| | |
|---|---|
| DiTerro: | $87/hour |
| Gupta: | $188/ hour |
| Hill: | $193/hour |
| Mills: | $193/hour |
| Screen: | $212/hour |
| Chandra: | $212/hour |
| Vasvari: | $212/hour |
| Hedyt: | $75/hour |
| Zorenko: | $87/hour |

---

case would not be in any way comparable to an "extended and complex" criminal case warranting additional attorneys' fees.

[14]  The case began in 2010 so the billing rates addressed in this report are an appropriate comparison.

13

These rates were calculated starting with the median rate charged by all  reporting civil

attorneys in Ohio, in all fields of expertise, with the same range of experience as measured by

the years since their graduation from law school.  (*Id*. at 23).  This median rate for Ohio was then

multiplied by 1.07 to represent the average premium paid in the Greater Cleveland area.  (*Id.*).

The Court did not discount the rate based on the average 12% lower median rate charged by civil

rights lawyers.  Paralegals were assessed a base rate of $81/hour based on the mid-range reported

by the Economics in Law report, and they were also given the 1.07 multiplier for the Cleveland

area.

The Court can neither determine whether the Chandra law firm would have represented

the Plaintiffs in this case for this lower hourly fee, nor can the Court determine whether the

Plaintiffs might have been willing and able to pay any additional premium out of their own

pocket in order to ensure they had one of the highest priced law firms on the case.  Based on the

quantitative evidence available to the Court, however, there would undoubtedly have been a

sufficient number of competent, experienced attorneys who would accept the rates set forth by

the Court for a case of this nature.

Using the above listed hourly rates, if the Court were to accept that all hours billed in this

case were reasonable and appropriate charges, the total fees would amount to $399,433.48.[15]

However, as set forth in the Report and Recommendation issued by Magistrate Judge

---

[15]

  This number was calculated as follows: DiTerro's rate of $87.00 times 3.5 hours, equals
$304.50.  Gupta's rate of $188.00 times 987.85 hours, equals $185,715.80.  Hill's rate of
$193.00 times 6.3 hours, equals $1215.90.  Mills' rate of $193.00 times 6 hours, equals
$1158.00.  Screen's rate of $212.00 times 418.55 hours, equals $88,732.60.  Chandra's
rate of $212.00 times 434.2 hours, equals $92,050.40.  Vasvari's rate of $212.00 times
118.4 hours, equals $25,100.78.  Hedyt's rate of $75.00 times 26.4 hours, equals $1980.
Zorenko's rate of $87.00 times 36.5 hours, equals, $3175.50.

Vecchiarelli, the number of hours spent by the Plaintiffs' attorneys in this case were well beyond

reasonable.  The Court agrees with many of the cuts proposed by Magistrate Judge Vecchiarelli

in her Report and Recommendation and for the reasons set forth therein, the following cuts

should be taken from the submitted fee request:[16]

| | |
|---|---|
| Pre-engagement fees - work performed prior to 9/2/13[17] | $ 73,806.00 |
| Work performed in the Kilroy case | $      84.80 |
| Time spent talking to the press (block billing) | $    612.00 |
| Time spent by Hill and Mills for "Moot Court" practice | $   2377.90 |

In addition, the Court agrees that the fees related to discovery in this case are excessive

and unreasonable.  This case involved a facial attack to a statute that had been in place since the

1970s.  A facial attack challenges the statute without regard to the underlying facts of any

individual's case and without need for discovery as to how the statute was applied in any

---

[16]

   The categories of cuts have been upheld, however, the amounts have been changed to account for the revised billing rates assigned by the Court, as well as to include charges by Mr. Vasvari that fall within the described categories of cuts but were not addressed in the Report and Recommendation.

[17]

Plaintiffs contend that it is appropriate to bill for work done prior to filing.  This is not disputed.  Rather, the Magistrate Judge, and this Court by adoption, have determined that it is not appropriate in this case to award fees for exploratory work performed prior to there being a representation agreement whether work is being directly billed to the client or is being performed on a contingency basis.  In this case, based on Dr. Lavin's declaration, not only was there no written agreement signed before September 2, 2010, there was no indication from the attorneys that a case could or would be filed until August 31, 2010 when the representation letter was sent to the Plaintiffs for signature. Plaintiffs bear the burden of showing that the fees were reasonably accrued in the litigation.  In this case they have failed to convince the Court that there was any representation undertaken, let alone memorialized orally or in writing prior to the receipt and signing of the Aug. 31 contingency fee agreement. The Court emphasizes that it is not setting forth a new "bright line" rule as Plaintiffs' counsel and amici fear or exacting a "financial punishment" for any alleged violation of Rule 1.5(c)(1).  This ruling is limited to the unique facts and evidence submitted in this action.

15

particular case.  Further, much of the discovery that was billed in this case was related to the preparation, service, and defense of third-party subpoenas that were untimely under the discovery schedule set forth by the Court, and did not seek to provide any information necessary to the facial challenge of the statute at issue.[18]   Further, even if this line of discovery had been timely implemented, the scope and subject matter of the discovery was unreasonable for a case of this nature.  As Magistrate Judge Vechiarelli articulated in the Report and Recommendation, "the expenditure of more than 270 hours of time totaling $97,227.75 in fees . . . to discovery whether certain entities are Medicaid providers and whether those providers had substantial number of shareholders is clearly excessive and incredibly inefficient."  (ECF #127 at 37).   This Court would go even further by characterizing this as a foray into exploratory discovery that led more to the discovery of new potential clients than facts necessary to the litigation of the case.[19]   In addition, the discovery attempts aimed at gaining information from Attorney General Mike DeWine, which were quashed by this Court, would have, at best, led to the establishment of a peripheral and largely irrelevant body of facts and line of argument.  Thus, instead of adopting the twenty-five percent overall cut to fees sought for discovery,  the Court has cut all fees attributed to discovery (primarily third-party discovery) that occurred after the discovery deadline had already passed.  This amounts to a reduction of $18,250.60.

---

[18]  Included was a subpoena for Attorney General Mike DeWine which was quashed.

[19]

Before the Court ruled on the cross-motions for summary judgment, but after attempting to engage in untimely discovery (which was billed against the Defendants in this case) seeking information on the number of mutual funds holding stock in public corporations that serve as Medicaid providers, the Chandra law firm took on a separate but related case, challenging the same statute on behalf of a shareholder of a Medicaid provider. *Kilroy v. Husted*, Case No. 2:11-cv-145 (S.D. Ohio 2011). (ECF #127 at 4).

The Court also agrees that the time spent on the appeals briefing was excessive. However, a twenty-five percent reduction, as suggested by the Magistrate Judge, is not sufficient to address the scope of over-billing that occurred in this case.  Because the issues on appeal were exactly the same as those repeatedly briefed and argued in connection with the multitude of filings submitted at the trial level,[20] and because each of those filings was drafted, edited, and re-drafted an inordinate number of times below, the appellate brief should have required no more than a minor re-working of the work that had already been completed at the trial level. Nonetheless, the original attorneys fee request sought nearly $250,000.00 for the appellate work alone.  For this reason, the Court finds that at least a fifty percent reduction in the amount billed on the appeal is appropriate.  This leaves these attorneys with compensation for more than a reasonable number of hours for the work that was required during this appeals process.  Under the newly calculated billing rates set forth above, this reduction amounts to $65,584.58.

The Court also finds that it is unreasonable to charge the Defendant for the following fee submissions:

*     Time spent seeking out amicus partners and assisting in the preparation of amicus briefs.   This amounts to $6503.10.

*     Time spent trying to expedite the appeal and argument schedules.  This amounts to $ 937.10.

---

[20]

  Prior to briefing of the appeal, Plaintiffs had filed a motion for preliminary injunction, prepared for a hearing on the preliminary injunction motion, filed objections to the Report and Recommendation, responded to Defendant's objections to the R &R; filed a motion for summary judgment; responded to the Defendant's motion for summary judgment; replied to the Defendant's response to Plaintiffs' motion for summary judgment; filed a motion to supplement the record; and, filed a reply in response to the objections to the motion to supplement the record.  Each of these filings involved innumerable reviews, edits, corrections, and in some cases, re-filings or corrected filings.

\*       Time spent for Ms. Gupta to travel to Cincinnati for oral argument.  This amounts to $2,011.60.[21]

\*       Charges submitted relating to the "moot court" presentation made to Mills and Hill.  This amounts to $5,816.40.[22]

\*       Time spent amending appellate brief to give credit to co-counsel and asking the Court of Appeals to add co-counsel's name to the Court of Appeals opinion.  This amounts to $530.00.

\*       In excess of 65 hours of delegable non-professional and clerical work that was charged at attorney rates.[23]  Adjusting for the difference between Ms. Gupta's rates and the paralegal rates, this amounts to a further reduction of $6625.60.

Finally, Plaintiffs seek far more than allowed for fees related to the preparation and filing of their request for attorneys' fees.   Absent special circumstances, which are not present in this case, the hours spent preparing and litigating the issue of attorneys' fees are limited to 3% of the total hours reasonably spent litigating the main case.  *Coulter v. Tennessee*, 805 F.3d 146, 151 (6th Cir. Tenn. 1986); *see also Northeast Ohio Coalition v. Sec'y of Ohio*, 695 F.3d 563, 574-75 (6th Cir. Ohio 2012).   Plaintiffs originally sought compensation for over 2000 hours of time their attorneys spent on this case, including over 114.5 hours spent addressing the attorneys' fees

---

[21]

  The Report and Recommendation addresses why the costs associated with this travel are not reasonable.  The same reasoning applies to the attorney fees charged in connection with this unnecessary travel.  While it is completely reasonable to assume that Ms. Gupta would have an interest in attending the arguments, it is unreasonable to bill this as an expense to be paid by the Defendant when she was not actually participating in the appellate argument.

[22]

  For the same reasons that it was unreasonable to bill time spent by Mills and Hill, it is not reasonable to allow billing for the time spent by the other attorneys preparing to present their moot court case to Mills and Hill.

[23]

  Attorney's fees are not recoverable for performing tasks that are "easily delegable to non-professional assistance."  *Halderman v. Pennhurst State Sch. & Hosp*., 49 F.3d 939, 942 (3rd Cir. 1995); *Spegon v. Catholic Bishop*, 175 F.3d 544, 553 (7th Cir. 1999).

18

request.[24]  This would have resulted in additional attorney's fees in the amount of nearly $38,000 just for submitting a request for fees.

Even had all of the submitted hours been reasonably billed, the hours attributable to the fee request would have been more than double the allowable amount.  The Court has determined, under the particular circumstances of this case, at the very most, only approximately 740 hours are reasonably compensable for work on the main case.  Therefore, the time spent preparing and filing the attorneys' fees request was nearly 92.3 hours more than is allowed under the 3% limit imposed by the Sixth Circuit.   This means that the original request related to the preparation of a fee request was nearly eighty percent higher than is allowed under the law. The Court must, therefore, further reduce the amount of attorneys' fees awarded by an additional $17,972.66.[25]

Taking all of the above deductions into account, the total billing amount under the lodestar calculation would be $198,321.14.  However, this does not end the Court's inquiry into the reasonableness of the fees to be awarded.  "Upon determining the lodestar, a district court also has discretion to decide whether an upward or downward adjustment is warranted in order to reach a reasonable fee award." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed.

---

[24]

Plaintiffs' counsel notes that, at the appropriate time, he will be submitting a motion seeking fees and costs for the time expended litigating their fees and costs. (ECF #138, fn. 61) However, as noted herein, Plaintiffs have already submitted 9 pages of time sheets dedicated to billing for preparation of their fee requests. (ECF #97-3, pp.112-12)  This already exceeds the 3% cap by a wide margin. Accordingly, no further submissions will be considered.

[25]

 Approximately 72% of the work attributable to the attorneys' fee request was performed by Ms. Gupta at an allocated rate of $188.00 per hour.  The remainder was billed by Mr. Screen, Mr. Vasvari, or Mr. Chandra, who have been allocated a rate of $212.00 per hour.

19

Appx. 496, 499-500 (6th Cir. 2011)(citing *Geirer v. Sundquist*, 372 F.3d 784, 792(6th Cir. 2004)).

The Court may consider the following factors when determining whether an adjustment is appropriate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 103 S.Ct. 1933, 76 L. Ed. 2d 40 (1983)(citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The evaluation of these factors is meant to ensure that the awarded fees "are adequate to attract competent counsel, but ... not produce windfalls to attorneys" and will compensate the attorneys in the same manner that they would be compensated by a fee-paying client." *Id.* at 430 n.4.

The amount of reasonable time and labor required was addressed to some degree in the discussion explaining the appropriate number of hours allowed under the lodestar calculation. Blocks of time that were categorically overcharged have been addressed, but the Court has also found numerous instances in which the Plaintiffs' attorneys spent additional unwarranted time addressing filing errors, rule violations, requests for extensions of time, and briefing limits that are not appropriately billed to a government defendant in a fee-shifting case. (See, e.g., ECF #30, 36, 48, 50, 52, 61, 63, 64, 65, 68, 77, 90, 94, 118, 119, 129). In addition, this case did not require the amount of time and labor Plaintiffs poured into the discovery process in order to effectively address the legal question at hand. Indicative of the fact that the question raised was

20

to be determined as a matter of law, without heavy reliance on factual evidence, neither Plaintiffs nor Defendant presented any testimony at the preliminary injunction hearing, nor did they seek admission of any evidence other than what had been attached as exhibits to the briefs, despite having engaged in over three months of preliminary research and discovery.  (ECF #16).

Having spent days upon days combing through the billing entries to quantify the deductions required under the lodestar analysis, the Court did not find an additional entry-by-entry review would be justified to find the precise amount of time spent addressing each additional or other unnecessary discovery and  filings.  Further, having reviewed the entries previously, the Court was aware that even if undertaken, such a review would not be effective in achieving this goal due in large part to the block billing methods and general descriptions used by the attorneys in recording their time.  These numerous instances of excessive and unnecessary time spent, however, do weigh in favor of an additional downward adjustment based on the *Johnson* factors.

The difficulty of the case and the skill required to do it properly also weigh in favor of a downward adjustment.  This case was a facial attack on a long-established statute which was enacted to prevent election fraud.[26]  (ECF #1 ¶ 19, 25, 51).  While there may not have been any cases directly on point factually, the legal principles were well established and there is an abundance of case law addressing the constitutional arguments raised by the Plaintiffs.  The case involved a series of repetitive arguments at the preliminary injunction stage, the summary judgment stage, and on appeal.   It involved a question of pure law and did not require the degree

---

[26]

   Both the Complaint and the Court of Appeals opinion make clear that the issues here involved whether the statute could survive strict scrutiny, and whether it was overbroad.  (ECF #1, 88).  As alleged in the Complaint, these are facial attacks to the statute.

of overzealous investigation, strategizing,  and unending drafting and re-drafting that was performed by Plaintiffs' attorneys.  As indicated in the lodestar analysis above, while Plaintiffs had every right to hire an attorney who would leave no stone unturned; explore and investigate every conceivable nuance of the case;  engage in excessive and overbroad discovery practices; run down every false lead; endlessly edit and repeatedly re-draft each document filed; and, who would charge the highest reported rates in the state of Ohio; the Civil Rights fee-shifting statute was not meant to pass such excesses on as costs to a losing Defendant.  Further, when that Defendant is the government, and the fees will eventually be borne by all taxpayers, it would be fiscally unconscionable for this Court to award fees so clearly in excess of what is necessary to competently address the issue in the case and to encourage competent counsel to accept such cases in the future.

Preclusion of employment is also not a factor weighing in favor of Plaintiffs.   This case should have involved, at the very most, only about 740 hours of work on the main case, stretched over more than two years.  In a firm of four people, this equals less than eight hours a month of reasonably necessary work per person.   In fact, even if every hour billed by the firm had been reasonable, it would have averaged out to only about 21 hours a month per person.  Unlike a discovery laden case being prepped for lengthy trial, this is not the type of intensive work that should have precluded the attorneys from taking on other cases and addressing other matters. Further, by taking on the *Kilroy* case mid stream in this litigation, the Chandra firm should have been able to capitalize on the similarities of the two cases, thereby reducing the effort needed to advance the interests of each.

With regard to the type of fee agreement reached in this case, the Court finds that there is

22

absolutely no evidence or indication that these Plaintiffs would have agreed to pay the rates or

hourly charges submitted by these attorneys if this were not a fee-shifting case, even if they had

the means to pay for representation.   These Plaintiffs are not the typical civil rights Plaintiffs

seeking redress for physical or monetary harm, who have no access to funds that could pay for

representation.  These Plaintiffs are physicians who were purportedly seeking to donate sums of

money to forward a politician's election campaign.  (ECF #2-1).  Further, there is no actual

evidence in the multitude of filings submitted in this case indicating that any of these Plaintiffs,

other than Dr. Lavin, ever intended to donate money.  (ECF #2-1).[27]  Of the more than 50

declarations filed in connection with the Summary Judgment motion, there were no affidavits or

declarations from any Plaintiff other than Dr. Lavin addressing a desire or attempt to donate

money to Mr. Cordray's campaign.[28]  Of the over forty declarations filed in connection with the

fee request, there were no affidavits or declarations from any Plaintiff other than Dr. Lavin.

Dr. Lavin began speaking with attorneys in April, 2010 (ECF #127 at 9); he knew Mr.

Chandra through friends and through civic activism.  (ECF #117-12).  The attorneys began

billing in June (Vasvari - ECF #97-9)) and July (The Chandra firm - ECF # 97-3).  Dr. Lavin did

---

[27]

The Complaint, and Dr. Lavin's affidavits state that he wished to contribute to Mr.
Cordray's campaign, and that the other Plaintiffs did too.  However, there is no actual
evidence that the other Plaintiffs ever sought, or intended to contribute to the campaign.
Dr. Lavin's declaration cannot be taken as evidence as to the other Plaintiffs' state of
mind (including their intent, desire, or understanding relating to campaign contributions).
(ECF #2-1; 117-12).   It is undisputed, however, that Mr. Cordray's campaign posted
information that indicated it would not accept contributions from Medicaid providers, in
compliance with R.C. 3599.45.

[28]

  There was an affidavit filed by Plaintiff Mr. Schreiber, but it did not state that he ever
desired to or attempted to donate to any campaign, nor that he was harmed in any way by
the statute being challenged.  (ECF #53-5).

23

not actually attempt to donate any money until after they had agreed that they would look into the case without any cost to him or the other Plaintiffs.    (ECF #127).  Further, Dr. Lavin specifically stated that he did not know if these attorneys would file a case on his behalf until he received the engagement letter at the end of August.  (ECF #117-12).  Rather, he understood that the attorneys would look into whether a Complaint even could be filed, without cost to him. (ECF #117-12).

The Plaintiffs contend that this case was accelerated and condensed due to time limitations created by the pending election.  This Court finds, however, that the consideration of time limitations also weighs in favor of a downward adjustment to the attorney fees in this case. The Plaintiffs' attorneys filed this case on September 3, 2010 and a Motion for Preliminary Injunction was filed the next day.  (ECF # 1,2 ).  This was less than two months before the election related to the campaign at issue in the case.

The statute, at issue, however, was part of Amended Senate Bill 159, which was passed in 1978. (ECF #1, ¶19, 25).   As stated above, Dr. Lavin began speaking with attorneys in April, and the attorneys started tracking time spent on the case in early June.   The billing records show that a Complaint was being drafted at the beginning of July, 2010.  Therefore, it appears that any time constraints imposed by the November 2010 election could have easily been alleviated by filing the case prior to September.   It appears that Plaintiffs were aware of the problem no later than April of 2010, and had they been serious about their desire to overturn the statute and contribute to Mr. Cordray's campaign, they, along with their lawyers, should have filed something as soon as possible to ensure the issue could be resolved not only before the election, but  while the donations could still have some positive effect on the campaign.  Had this been

done, the Defendants would have had a full opportunity to respond and the Court could have had time to rule on an expedited schedule without need for the filing for a preliminary injunction. This would have eliminated hours of unnecessary work and would have resulted in a more reasonable overall cost for this litigation.

The remaining *Johnson* factors also fail to provide any support for Plaintiffs' position that the fees requested in this case were reasonable and that any reduction would be unfair. There was no monetary award to be recovered in this case.  Although the results obtained were good, in that the statute was found unconstitutional on appeal, many of the tangential arguments made, which were developed at an immense cost in terms of hours spent, were unsuccessful and unnecessary.  Further, there is no evidence that this case was undesirable, or that other attorneys, who may have had lower billing rates and a more concise approach to this limited question of law, would not have been willing to take the case for a lesser fee.  There is also no evidence as to the nature and length of the attorneys' relationship with these clients other than an indication that Dr. Lavin was an acquaintance, and a friend of a friend of Attorney Chandra.   Further, there is no evidence that any of the attorneys had a direct relationship with any of the other Plaintiffs, even through the pendency of the this litigation.

Plaintiffs do cite to a multitude of cases in which courts have awarded higher hourly rates than this Court is willing to award in this case.   While the Court does not hold that higher rates should never be awarded, under the circumstances of this case the fee request is excessive, unwarranted and overreaching.  Many of the cases cited by Plaintiffs involved Defendants who either did not contest the fee request or who came to a negotiated award amount without the Court's intervention.  Further, as government funding at all levels of government is leading to

25

increased taxes and fiscal crises, it is imperative that this Court review fee requests that will

ultimately be borne by the taxpayer with a renewed level of scrutiny.  In doing so, the Court

must find a balance between satisfying the goals of the fee-shifting provisions in the civil rights

statutes, and overburdening the governmental defendant with fees and charges that produce an

unnecessary and unwarranted windfall to the Plaintiffs' attorneys.  By carefully examining the

median fees of competent attorneys in the area; by prohibiting the charging of extreme premium

rates in a fee-shifting case; and by ensuring that all hours billed actually provided added value to

the representation; this goal can be achieved without affecting the availability of willing and

competent counsel in such cases.

      Other factors have also been noted and considered in the decision to impose a downward

adjustment to the fees awarded in this case.  The Court has noted in its review of the billing

records, that the Chandra law firm's invoice improperly added $5 to $20 per entry through

improper calculations to many if not all of the entries ending in a fifteen minute increment.  It

appears that these entries were rounded up to .3 hours, rather than being calculated as .25 hours.

This resulted in overbilling in at least the hundreds of dollars range, and likely reaching into the

thousands.  While the Court did not check each and every entry to see if this occurred throughout

the entire 121 pages of time entries, it appeared in each instance throughout a random sampling

of over twenty entries taken from various pages in the billing invoice.  Other calculating errors,

which also favored the attorneys, were found as well, although not as consistently.

      In addition, as set forth in the Magistrate Judge's Report and Recommendation, the

original fee request contained numerous other errors and questionable billing practices that

inured to the benefit of the Plaintiffs' attorneys.  These included but are not limited to: recording

of time spent in a different litigation; recording time under the wrong dates; the use of imprecise block billing; billing for unnecessary travel expenses; excessive and largely unnecessary or irrelevant lines of discovery; billing attorney rates for purely clerical work; billing for corrections caused by filing errors and failure to follow court rules; and, billing for time spent speaking to the press.  These collective errors and misjudgments resulted in numerous instances of over billing, and cast doubt on the accuracy and reliability of the Chandra firm's billing records in general.  Such practices also lend support to the Court's decision to impose a downward adjustment of the fee award in this case.

Finally, the Court has also factored into the post-lodestar analysis the fact that the Defendant in this case is a governmental entity, and the award will ultimately be borne by the taxpayers of the state (including the Plaintiffs themselves).  When exercising its discretion to award fees that will be charged to a governmental entity, the Court is and must be the guardian of the public fisc.   This role, of course, cannot overshadow the Court's responsibility to be a fair and impartial arbiter of the questions presented, but it does require the Court to give some consideration to the taxpayers who become in essence an unwitting, affected party to the action. To be faithful to these obligations, the Court exhaustively and painstakingly reviewed every aspect of this fee application to arrive at an award that is not only fair to all parties, but also reasonable in light of the unique facts and circumstances of this case.

The fee request originally submitted was "grossly exaggerated and absurd" considering the type and quality of work that would have been sufficient to provide justice to the litigants in this case.  Under such circumstances courts have held that courts have the authority to deny fees in their entirety.  *See, M.G. v. Eastern Regional High School Dist.*, 2009 U.S. Dist. LEXIS 98631

at *10 (D. N.J.)(quoting *Hall v. Borough of Roselle*, 747 F.2d 8385, 842 (3d Cir. 1984)). An

argument can be made that such a sanction would be supportable under the facts of this case,

based on all of the considerations set forth above.  Nonetheless, the Court finds that under the

unique circumstances of this case a downward adjustment to the lodestar calculation would be a

an adequate consequence.  Neither the EAJA nor the Sixth Circuit case law mandates that Courts

slave over a detailed analysis of each entry in every case, "particularly where analysis of other

factors makes clear that the total award is not 'reasonable.'" *Crim v. Commissioner of Soc. Sec*.,

2013 U.S. Dist. LEXIS 35373, *10 (S.D. Ohio 2013).  Rather courts routinely apply significant

across the board percentage reductions where an adjustment is deemed warranted.  *Id.*

      Considering the outrageous nature of the original request; the plethora of billing errors

and inconsistencies; the relatively straightforward nature of the issue being litigated; the

moderate level of difficulty involved; the repetitive nature of the various filings; the excessive

amount of editing and re-drafting undertaken; the numerous re-filings caused by inattention to

court rules or orders; and, other excessive and inefficient practices outlined in the Report and

Recommendation, the Court has made a reduction of 35 percent to the lodestar calculation of

$198,321.14.[29]  This brings the final award for attorneys fees to $128,908.74.  This is a number

that the Court still considers higher than necessary for the work that was actually required in

order to provide competent and effective representation on the issue, but finds that it is within

the realm of reason for an ambitious approach to the case at hand.

---

[29]

  Courts are allowed to make an across the board reduction based on a percentage of fees
sought in order to account for multiple, miscellaneous, errors, inconsistencies, or
improper billing practices as determined after a consideration of the *Johnson* factors.
*See, Hensley*, 461 U.S. 424.

**Conclusion**

For the reasons set forth above, the Report and Recommendation of Magistrate Judge Vecchiarelli (ECF #127) is Adopted in Part and Not Adopted in Part.  Plaintiffs' Motion for Attorneys' Fees (ECF #97) is granted in the total amount of $128,908.74.  The Court further adopts the reasoning of Magistrate Judge Vecchiarelli with regard to the recommended cuts to the costs requested by Plaintiffs' attorneys with one exception.  Plaintiffs' request for the cost of serving a third party subpoena on Kroger Co., in the amount of $127.03, will be denied as it was served after the discovery cutoff date.  Subtracting $127.03 from $6,442.03 results in a final cost award of $6,315.00.  These costs are reasonable and supported by the evidence. Plaintiffs' Bill of Costs is terminated as moot. (ECF #99)

IT IS SO ORDERED.


_/s/Donald C. Nugent_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:__June 13, 2013____