**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

ARTHUR LAVIN, *et al.*,                    )
                                           )    CASE NO.   1:10-CV-1986
        Plaintiffs,                      )
                                           )
        v.                               )    MAGISTRATE JUDGE VECCHIARELLI
                                           )
JOHN HUSTED, *in his official*             )
*capacity as Ohio Secretary of State*,     )    **REPORT AND RECOMMENDATION**
                                           )    DOC. NO. 161
        Defendant.                       )

       This case is before the magistrate judge on referral.  Before the Court is the

motion ("Motion") of Plaintiffs Arthur Lavin ("Lavin"), Jason Chao, Michael W.

Devereaux, Patricia J. Kellner, Jerome Liebman, Eric R. Schreiber, Constance D.

Magoulias, Peter A. DeGolia, and Nathan R. Beachy (collectively, "Plaintiffs"), for

attorney's fees in the amount of $457,065.50,[1] and expenses and costs in the amount

of $14,943.98, pursuant to 42 U.S.C. § 1988 ("Motion"), for time and costs expended in

pursuit of Plaintiffs' original fee application in this case.[2]  (Doc. Nos. 161, 162).

Defendant, Jon Husted, in his official capacity as Ohio Secretary of State ("Secretary"),

opposes the amount requested as excessive.  (Doc. No. 163.)  For the reasons given

below, Plaintiffs' Motion should be GRANTED in part and DENIED in part.  Specifically,

---

    [1] Plaintiffs' Motion requests an award of fees in the amount of $457,109.00.  (Doc.
No. 161.)  In a subsequent errata, however, Plaintiffs point to minor mathematical errors
in their Motion and indicate that the correct amount of their fee request is $457,065.50.
(Doc. No. 162.)

    [2] As discussed in the factual background of this Report and Recommendation, *infra*,
the parties settled the application for fees and costs expended in furtherance of the merits
of this case for $454,635.53 in fees and $6,442.03 in costs.

it is recommended that Plaintiffs be awarded a total of $13,639.07 in fees and

$9,531.48 in costs expended in pursuit of Plaintiffs' original request for fees in this

matter.

## I.  Introduction and Relevant Procedural History

This case generally arises out of Plaintiffs' challenge, pursuant to 42 U.S.C.

§ 1983, to the constitutionality of Ohio Revised Code § 3599.45, which prohibited the

state attorney general or any of the 88 county prosecutors from accepting campaign

contributions from any Medicaid providers or any person having any ownership interest

in a Medicaid provider.  Ohio Rev. Code § 3599.45.  After litigation in this Court and

then an appeal to the Sixth Circuit, the issue of that statute's constitutionality has now

been settled.  *See Lavin v. Husted*, 689 F.3d 543 (6th Cir. 2012) ("*Lavin I*").  What

remains for this Court's determination is an issue that has proven to be more

contentious than the merits of the original question in this matter: attorney's fees and

costs.  Specifically, the parties' current dispute centers around the amount of fees and

costs reasonably awarded to Plaintiffs' counsel for their work litigating the issue of fees

and costs incurred in litigating the merits of the case, or "fees for fees."

In September 2010, Plaintiffs filed their § 1983 complaint alleging that Ohio's

prohibition against Medicaid providers' contributing to the campaigns of the Ohio

Attorney General or any county prosecutor was an unconstitutional infringement of the

providers' First Amendment rights.  They also filed a motion for a preliminary injunction

to block enforcement of § 3599.45 pending the then-upcoming election.  In October

2010, after a hearing and the filing of proposed findings of fact and conclusions of law,

the magistrate judge issued a Report and Recommendation ("R&R") recommending

2

that the motion for a preliminary injunction be granted.  Thereafter, the district court judge declined to adopt the R&R and denied plaintiffs' motion.

The parties then conducted discovery on the merits of the case and, in March 2011, they filed cross-motions for summary judgment.  In July 2011, the Court denied Plaintiffs' motion for summary judgment and granted Defendant's motion.  Plaintiffs filed a notice of appeal in the Sixth Circuit.  In July 2012, after briefing and argument, the Sixth Circuit reversed the judgment of the district court and remanded the case for entry of judgment in favor of Plaintiffs.  In September 2012, the district court entered judgment in favor of Plaintiffs, declared § 3599.45 unconstitutional in its entirety, and enjoined enforcement of the statute.

Later in September 2012, Plaintiffs moved for attorney's fees, expenses, and costs pursuant to § 1988.  They sought attorney's fees in the amount of $657,652.75 and costs in the amount of $7,792.93.  The fee request included an amount for work performed prior to the date on which Plaintiffs signed the contingent fee agreement with their counsel.  Defendant opposed the request for fees and costs, arguing, *inter alias*, that Plaintiffs' request for fees for work expended prior to the signing of the contingent fee agreement violated Rule 1.5(c)(1) of the Ohio Code of Professional Conduct and, thus, merited a complete denial of fees.  Defendant also pointed to various defects and deficiencies in Plaintiffs' billing records, as well as the excessive amount of hours requested by Plaintiffs, to argue for reductions in the amount of fees and costs.

In February 2013, after a hearing and briefing by the parties, the magistrate judge issued an R&R recommending that the district court award Plaintiffs the amount of $454,635.53 in attorney's fees and $6,442.03 in costs (the "February 2013 R&R").

3

(Doc. No. 127.)  The most significant of the reductions recommended by the R&R was a reduction of $100,183.00 in fees, representing 302.75 hours expended prior to the signing of the contingent fee agreement between Plaintiffs and their counsel.  (*Id*. at 11-15.)  Rather than imposing a bright line rule that any work performed before a contingent fee agreement was signed was not compensable, the magistrate judge reasoned that Defendant was not required to pay fees incurred prior to the signing of the contingent fee agreement because, based on the specific facts of the case, counsel had no expectation of receiving compensation for exploratory work performed prior to that date.[3]  (*Id*. at 14.)  The magistrate judge also recommended deductions based on: (1) the excessive hourly rate of one of Plaintiffs' counsel; (2) work performed in a different matter but billed in this case; (3) imprecision in block billing when attempting to account for time in a *post hoc* manner; (4) fees requested for outside consultants who participated in a moot court argument; (5) excessive hours spent on discovery related to third parties (a 25% across-the-board reduction of the fees requested for this work); (6) excessive hours spent on appellate work (another 25% across-the-board reduction);

---

[3] In addition to making this fact-based determination, the magistrate judge noted that at least some portion of the substantial amount of hours expended and costs incurred prior to the signing of the fee agreement – an issue entirely attributable to Plaintiffs' counsel, who failed to obtain their clients' agreements prior to expending significant work on this case –  were questionably expended.  (Doc. No. 127 at 35, n.21.)  Counsel expended 302.75 hours, totaling $100,183.00 in fees and $1,164.31 in costs prior to the signing of the agreement.  Nearly one-third of those hours, 100.25 hours, were expended (at attorney rates) in researching the legislative history of § 3599.45.  (Doc. No. 106-8.)  This research consisted of reviewing microfilm copies of newspaper articles at libraries and the Ohio Historical Society, as well as traveling to Youngstown to examine the papers of a former Ohio senator.  (*Id*.)  As noted by the magistrate judge, Plaintiffs' counsel failed to explain why they billed these activities at the hourly rates of attorneys, rather than paralegals or law clerks.  (Doc. No. 127 at 35, n.21.)

and (7) excessive and unnecessary travel expenses.  (*Id*. at 42-43.)

The parties filed objections and responses.  In June 2013, the district court issued an order adopting the February 2013 R&R in part.  (Doc. No. 139.)  The district court adopted many of the reductions recommended by the magistrate judge, but also imposed additional substantial reductions, *e.g.,* by: lowering the hourly rate of each attorney; disallowing fees for discovery that occurred after the expiration of the discovery deadline; and imposing additional across-the-board reductions on fees incurred in discovery and appellate work.  Ultimately, the district court awarded Plaintiffs $128,908.74 in attorney's fees and $6,315.00 in costs.  (*Id*.)

Plaintiffs filed a notice of appeal in the Sixth Circuit.  In September 2014, after briefing and argument, the Sixth Circuit vacated the district court's order and remanded the case with instructions to reassign the case to a different district court judge.  *Lavin v. Husted*, 764 F.3d 646 (6th Cir. 2014) ("*Lavin II*").  Thereafter, the district court referred the issue of Plaintiffs' attorney's fees and costs to the magistrate judge for general pretrial supervision.  In November 2014, the magistrate judge conducted a settlement conference.  Thereafter, the parties agreed to settle the matter of Plaintiffs' attorney's fees and costs arising out of the litigation of the merits of Plaintiffs' claims.  Specifically, the parties agreed that Plaintiffs would receive $454,635.53 for attorney's fees and $6,442.03 for costs incurred through the date of the filing of the initial fees motion in this case, the amounts originally recommended as reasonable in this case by the magistrate judge.  (Doc. No. 159.)  The parties agreed to brief the issue of attorney's fees and costs incurred thereafter, *i.e.*, fees for fees.  (*Id.*)

5

## II.  Motion for Fees for Fees

In December 2014, Plaintiffs filed the present Motion.  (Doc. No. 161.)  They requested $457,109.00 in attorney's fees and $14,943.98 in costs.  (*Id*.)  Thereafter, they filed a notice of errata in which they pointed to minor mathematical errors in the Motion and amended their request for attorney's fees to $457,065.50.  (Doc. No. 162.) Plaintiffs request fees for fees as follows:

| Stage of Fees Litigation | Number of Hours | Fee Amount Request |
|---|---:|---:|
| Reply in Support of the Initial Fees Motion | 234.8 | $86,124.50 |
| Objections to the February 2013 R&R | 298.6 | $109,891.00 |
| Appeal | 808.2 | $221,681.00 |
| Post-Appeal | 131.8 | $39,369.00 |
| **TOTAL** | **1,473.4** | **$457,065.50** |

Defendant opposes the Motion, arguing principally that, under the Sixth Circuit decision in *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), Plaintiffs are entitled to an amount not greater than 3% of the amount of fees awarded for the merits portion of the litigation, or $13,639.07.  (Doc. No. 163.)

As a preliminary matter, it bears noting that, once again, Plaintiffs have submitted a request for fees and costs that is egregiously excessive.  Their billing records request compensation for numerous hours spent in unreasonable and unnecessary tasks, such as lengthy discussions with potential *amici* counsel and outside consultants, communications with legal writing experts, preparation of issues for briefs submitted to legal writing organizations, and numerous internal conferences and discussions for

6

which each participant billed time.  These practices – which reflect Plaintiffs' strategy of over-lawyering and over-working every single issue in this matter – result in shockingly excessive fees for otherwise routine tasks.  In this Court's experience, no objectively reasonable fee-paying client would pay this amount to compensate his or her counsel for pursuing fees.  As one example, Plaintiffs' billing records reflect that Plaintiffs expended nearly $109,000 on the preparation and filing of Plaintiffs' objections to the February 2013 R&R, a 30-page document accompanied by 52 pages in exhibits.  Compounding these issues is the fact that Plaintiffs have again engaged in block billing, assigning numerous discrete tasks to single periods of time, thus making it impossible for the court to discern how much of that period of time was devoted to reasonable work and how much was not.  While there is no principle that prohibits block billing, counsel who engage in this practice do so at their own peril when the amounts claimed appear to be excessive.  *See, e.g., Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006).

Further, Plaintiffs' billing records reflect a concerted effort to develop this case into a cause célèbre, setting the stage to challenge long-held precedent regarding the calculation of reasonable attorney fees for the purposes of § 1988.  The original purpose of this litigation – challenging the constitutionality of an Ohio statute, efforts for which Plaintiffs' counsel have already been compensated – has fallen to the wayside in favor of Plaintiffs' stated interest in changing the way courts consider fee requests in this context.[4]  This is evidenced, in part, by the fact that Plaintiffs now request an amount of

---

[4] *See* Doc. 149-2 (Letter from Plaintiffs' Counsel to Defendant's Counsel inquiring about settlement and noting, "Additional work from this day forward will only increase

fees for fees that exceeds the amount they received for their efforts on the merits in this case.

As discussed in more detail below, the decision in *Coulter* applies to this case and limits Plaintiffs' request for fees for fees to an amount not greater than 3% of the amount they received in fees for the merits portion of this case.  Accordingly, this Court need not engage in a line-by-line assessment of Plaintiff's voluminous billing records.  Plaintiffs' conduct in this case is precisely the type of behavior that *Coulter* is intended to prevent.

### III.  Law and Analysis

#### A.    Attorney's Fees

Section 1988 authorizes a district court to allow the prevailing party in any action brought pursuant to § 1983 a reasonable attorney's fee as part of the costs.  42 U.S.C. § 1988(b).  Because the purpose of § 1988 is to ensure "'effective access to the judicial process' for persons with civil rights grievances . . . a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting  S. Rep. No. 94-1011, p. 4 (1976), and U.S. CODE CONG. & ADMIN. NEWS 1976, p. 5912).  The usual starting point in determining the proper amount for an award of fees is multiplying the hours worked and the rates charged for that work.  *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2004); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  In this context, the touchstone of a court's analysis is whether the request seeks fees for work that was

---

expenses.  Plaintiffs do intend with this case to continue to challenge the *Coulter* 3% cap on fees for fees and cannot think of a better case in which to do it.")

reasonably performed.  *Hensley*, 461 U.S. at 433-34.  The party requesting fees bears the burden of demonstrating the reasonableness of the number of hours charged. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008).  In this context, one measure of reasonableness is whether an attorney would expect a fee-paying client to bear the cost or expense.  *See Perdue v. Kenny A*, 559 U.S. 542, 571 (2010) (characterizing the purpose of § 1988 as "ensur[ing] that counsel for prevailing parties [are] paid as is traditional with attorneys compensated by a fee-paying client") (internal quotation marks omitted); *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1023 (N.D. Ohio 1997) ("An attorney's fee under § 1988 include those expenses that are incurred in order for the attorney to render his or her legal services and that would normally be charged to a fee-paying client.").

There is no dispute that "time spent preparing, presenting and trying attorney fee applications is compensable."  *Coulter*, 805 F.2d at 151.  In *Coulter*, however, the Sixth Circuit recognized that "some limitations must be placed on the size of these fees. Otherwise the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the civil rights case and the attorney fee case." *Id*.  Accordingly, under *Coulter*, fees awarded for litigating initial fee requests are generally subject to the following limits:

> In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary.  Such guidelines are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted

litigation.

*Id*.

In this case, Defendant relies on the holding of *Coulter* to argue that Plaintiffs are entitled to fees for fees in an amount not greater than 3% of the amount awarded in fees for the litigation on the merits in this matter, or $13,639.07.  Plaintiffs assert three arguments against applying *Coulter* to their request for fees for fees: (1) the circumstances of the case warrant departing from *Coulter*; (2) the 3% cap of *Coulter* contravenes subsequent United States Supreme Court precedent; and (3) the 3% cap is inconsistent with the purpose of § 1988.  Each of these arguments shall be considered in turn.

### 1.     Whether Special Circumstances Warrant Departing from *Coulter*

Although the court in *Coulter* acknowledged that "unusual circumstances" might merit departing from its cap on fees for fees, 805 F.2d at 151, the decision does not describe the circumstances that would justify such a departure.  After *Coulter*, however, the Sixth Circuit and courts within its jurisdiction have departed from the 3% cap in limited circumstances.  These have included: where a prevailing party was "forced by a defendant's actions to respond to a 'major litigation' with respect to attorney's fees," *Moore v. Crestwood Local Sch. Dist*., 804 F. Supp. 960, 971 (N.D. Ohio 1992); where the majority of an attorney's work occurs at an administrative level for which reimbursement is unavailable or which must be obtained through new litigation, *Klein v. Central States, Southeast and Southwest Areas Health and Welfare Plan*, 621 F. Supp. 2d 537, 545 (N.D. Ohio 2011); when the defendant "took a less than moderate position"

10

that increased the fee litigation, *Gross v. Perrysburg Exempted Village Sch. Dist.*, 306 F. Supp. 2d 726, 742-43 (N.D. Ohio 2004); when the defendant refused to end litigation when given the opportunity, *Lanci v. Med. Mutual of Ohio*, No. 1:08-CV-1575, 2011 WL 1792557, *2, n.4 (N.D. Ohio May 10, 2011); and when the defendant's "spurious arguments" protracted the fees litigation, *Lamar Advertising Co. v. Charter Twp.  of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 2006).

Here, Plaintiffs argue that unusual circumstances preclude the application of the 3% cap in this case because doing so would yield a "severe result."  Specifically, Plaintiffs contend that limiting their fees-for-fees would fail to compensate Plaintiffs for their "*entire* effort" on appeal and for their work "building the record" in this Court. (Motion at 13 (emphasis in original).)  Plaintiffs do not, however, point to any legal authority justifying a departure from the *Coulter* cap merely because they were required to pursue an appeal on their fees-for-fees application.  Indeed, the Sixth Circuit has rejected the notion that extended litigation on a fee application is a *per se* basis for departing from the cap.  *Northeast Ohio Coalition for the Homeless v. Sec'y of Ohio*, 695 F.3d 563, 575 (6th Cir. 2012) ("*NEOCH*").[5]  In *NEOCH*, the Sixth Circuit determined that the district court did not abuse its discretion in applying the 3% cap to the plaintiffs' request for fees for fees despite the fact that the parties had engaged in protracted and

---

[5] One of Plaintiffs' counsel – Subodh Chandra – was on the brief in *NEOCH*.  695 F.3d at 565.  As discussed in Section III(A)(3), *infra*, in *NEOCH*, the parties seeking fees raised similar arguments in support of rejecting the *Coulter* cap on fees for fees. Accordingly, Plaintiffs' counsel should be intimately familiar with the state of law and legal authorities on this issue and should not have required the voluminous number of hours expended researching this issue, which is another example of the excessive nature of Plaintiffs' counsel's fees-for-fees request in this case.

complicated litigation regarding attorney's fees in that case.  The Sixth Circuit observed that, although the appeal – taken by the defendants in that case – "did prolong the fee litigation, there is no indication that the appeal was needless or meritless. The defendants opposed the original motion for fees on several grounds that do not appear to be frivolous." *Id*.  Accordingly, in this case, the mere fact that Plaintiffs were required to seek review in the Sixth Circuit is not itself a sufficient basis for departing from the cap.

Further, the record offers no evidence that Defendant needlessly protracted the litigation on Plaintiffs' fee request by raising frivolous or needless arguments.  Plaintiffs contend that Defendant asserted "extreme and unjustified objections," such as "the argument that [Plaintiffs] should receive no fees at all, and the alternative argument to deny all pre-agreement fees."[6]  (Motion at 14.)  The record simply does not bear this out.  Defendant's assertion that Plaintiffs should not receive any fee was one argument of several raised by Defendant in opposition to the fee request.  The argument was based on a state rule of professional conduct and relevant case law.  Although not ultimately successful – in that it did not serve as a basis for a complete denial of fees – the argument was not so "spurious" as to constitute the unusual circumstances required

---

[6] Plaintiffs also make the assertion that their fees-for-fees request should not be subject to the 3% cap because Defendant "prolonged the litigation by raising numerous objections to the physicians' request" for fees. (Motion at 14.)  This argument lacks merit. The fact that an opposing party asserted objections to a fee request cannot serve as a basis for departing from the 3% cap.  Otherwise, the only time that the cap would apply would be when the party from whom fees for fees are sought declined to assert any defense to the initial fee application.  The cap in *Coulter* was not intended to require an opposing party to simply accept the moving party's request for fees without question. Interpreting *Coulter* to impose such a result undermines the reasonableness inquiry that is the touchstone of the fees inquiry.

to depart from *Coulter*.[7]  *See, e.g., Lamar Advertising*, 178 F. App'x at 501 (characterizing the losing party's arguments on appeal as "simply wrong" and finding that the "spurious arguments" of that party on appeal merited a departure from the cap). Other arguments asserted by Defendant in opposition to the initial fee request were not "extreme and unjustified."  Rather, Defendant's arguments were based on the record and supported by case law, even those that were not ultimately successful.  In fact, this Court agreed with a number of Defendant's objections and believed that across-the-board cuts in several areas were warranted.  Plaintiffs point to no legal authority holding that a defendant's unsuccessful non-frivolous arguments can constitute a basis for departing from *Coulter*.[8]

Further, Defendant's purported refusal to settle the issue of fees is not a

---

[7] Plaintiffs repeatedly refer to this issue as one that required substantial additional hours of work.  (*See, e.g.,* Motion at 13 ("It would also mean not compensating the physicians for work at the district-court level building the record, including on the flawed determination – on which the Sixth Circuit agreed with the physicians – to deny all fees incurred before he physicians' fee agreement with counsel was reduced to writing.").) Review of the record, however, reveals that they devoted not quite a single page in their reply in support of their fee motion to this issue, and approximately four pages in their 92-page brief on appeal.  (Doc. Nos. 117, 161-1.)  Further, the decision to deny their request for fees incurred prior to the signing of the fee agreement is not as "unprecedented" as Plaintiffs suggest.  The magistrate judge relied on the specific facts of the case to deny the fees for that period of time.

[8] Plaintiffs make much of the amount of work they expended in support of their fee request and take great pains to point out that they exercised "billing discretion" to waive or discount hours they spent working on their fees motion.  This is not, however, necessarily a virtue worth extolling in this case.  Rather, Plaintiffs' billing records reflect their practice – consistent throughout the entirety of this matter – of over-lawyering, over-working, and unnecessarily complicating the issues in this case.  The fact that substantial resources *can* be expended in addressing an issue does not mean that they *should* be.  This idea is central to the reasonableness inquiry that is the guiding principal in the context of fee requests.

13

sufficient basis to depart from the cap in this matter.  This is not a case in which the defendant repeatedly declined to settle only to have the case ultimately result in a judgment for the amount requested by the plaintiff.  Rather, the parties eventually agreed to settle the issue of fees for an amount that was more than $200,000 less than the original fee request.  Much like Defendant's reasonable objections to Plaintiffs' fee request, the timing of Defendant's decision to settle the fees request may have played some part in the resolution reached by the parties.  Absent some evidence of the type of misconduct that generally permits departure from the *Coulter* cap, any purported hesitation to settle this matter is insufficient to avoid the 3% cap in this case.

Taken together, Plaintiffs' arguments regarding unusual circumstances in this context can be construed to assert that, whenever a losing party raises *any* opposition to a request for fees, the subsequent request for fees-for-fees should not be subject to *Coulter*'s cap.  This cannot be the case.  Review of the decisions declining to apply the cap in *Coulter* reveals that, generally, the party opposing the fee request engaged in some sort of misconduct – raising meritless arguments, refusing to engage in settlement discussions, taking an extreme position – that extended the fees litigation and required the party seeking fees to engage in extra work.  This case is not such a case.  Rather, the litigation on the issue of fees in this case followed an ordinary route in this Court.  Indeed, if any party in this matter can be characterized as acting in an unreasonable or unprecedented manner, it is Plaintiffs.  As discussed above, in this case, Plaintiffs have submitted billing records reflecting facially excessive hours expended on unnecessary work.  This case presents no unusual circumstances meriting a departure from the *Coulter* cap.

14

### 2.    Whether *Coulter* Contravenes Subsequent Supreme Court Precedent

Plaintiffs contend that the Sixth Circuit's decision in *Coulter* contravenes the reasoning of *Commissioner, INS v. Jean*, 496 U.S. 154(1996), a subsequent United States Supreme Court case decided in the context of the Equal Access to Justice Act ("EAJA"), which permits an award of fees only to a prevailing party and only where the opposing party's position was not substantially justified.  In *Jean*, the Supreme Court addressed the question whether, in a fees for fees request under the EAJA, the prevailing party was required to demonstrate that the Government's position with respect to fees was not substantially justified in order to be eligible for fees for fees.  In that case, the district court determined, with respect to the application for fees arising out of the merits, that the Government's position was not substantially justified and, thus, the prevailing party was entitled to fees under the EAJA.  When the prevailing party subsequently sought fees for work expended on the fee application, the Government argued that, because the Government's position with respect to the prevailing party's fees was substantially justified, the prevailing party was not entitled to fees for fees.  The prevailing party argued that the district court's initial conclusion that the Government's position with respect to the merits was not substantially justified was sufficient to merit an award of fees for fees under the EAJA.  The Supreme Court agreed with the prevailing party.  The Court considered the text of the EAJA and concluded that, once a district court makes the determination that the Government's position was not substantially justified, a prevailing party need not make a second showing on this issue in order to receive fees for fees.  496 U.S. at 160.  ("The single

15

finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility.").

Plaintiffs argue that the decision in *Jean* reflects the Supreme Court's reliance on the *Hensley* standard for determining fees for fees applications, and that this reliance somehow negates holdings, like *Coulter*, that impose restrictions on fees for fees other than the standard of *Hensley*.  This is simply incorrect.  The issue in *Jean* was "narrow;" the Court characterized it as "affecting *only eligibility for compensation* for services rendered *rather than the amount that may be appropriately awarded for such services*." 496 U.S. at 156 (emphasis added).  The Court was not presented with any argument regarding caps or other limitations on requests for fees for fees.  Although the Court did affirm the *Hensley* standard as governing the consideration of fee applications, it did so in the context of applying that standard specifically to EAJA cases.  *Id*. at 161 ("Similarly, once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what is reasonable is essentially the same as that described in *Hensley*.").  There is simply no reasonable reading of *Jean* that precludes the application of the cap in *Coulter*.

### 3.    Whether *Coulter* Contravenes the Purposes of § 1988

Finally, Plaintiffs argue that *Coulter* contravenes the purposes of § 1988 because the 3% cap discourages parties and attorneys from pursuing the types of litigation addressed by § 1988.  This argument fails for several reasons.

First, *Coulter* is the law of this Circuit.  *See NEOCH*, 695 F.3 at 574 ("[W]e have

16

followed *Coulter*, a published case, in both published and unpublished cases.").  It is not

for this court to question whether the Sixth Circuit erred in determining that a 3% cap on

fees for fees was appropriate.  Indeed, the Sixth Circuit has rejected similar arguments

– raised by Plaintiffs' counsel – in another case regarding fees under § 1988:

> Although the plaintiffs argue that it is unlikely that attorneys
> will continue to act as private attorneys general in taking on
> civil rights suits "if they will be compensated for only a tiny
> fraction of every 100 hours that they reasonably spend
> briefing legitimate fee requests, defending appeals of fee
> awards, and negotiating lengthy and detailed consent
> decrees," this argument overstates the impact of the *Coulter*
> rule. The plaintiffs are correct that any cap on attorneys' fees
> might discourage attorneys from taking on civil rights cases,
> but the Fees Act itself presumes that the award in the main
> case provides sufficient incentive for attorneys. And as
> *Coulter* explains, while the availability of an award of fees for
> defending fee awards provides additional protection for such
> lawyers, this needs to be balanced against the unwanted
> incentives that could result from protracted litigation seeking
> fees for fees. Moreover, the plaintiffs err in arguing that
> attorneys will only receive a tiny fraction of every 100 hours
> they work on their attorneys' fees cases. The *Coulter* rule
> focuses on the hours spent on the main case. Thus, in a
> particularly complicated and lengthy main case, an attorney
> may be able to recover all of the claimed hours spent on the
> attorneys' fees case.

*NEOCH*, 695 F.3d at 574.

Second, the 3% cap is consistent with the reasonableness inquiry of *Hensley*.

Plaintiffs' arguments ignore the oft-quoted warning of that case that fee awards were not

intended to act as a windfall for attorneys.  461 U.S. at 444.  As the Sixth Circuit

recognized in *Coulter*, "the legislative intent behind attorney fee statutes . . . was to

encourage lawyers to bring successful civil rights cases, not successful attorney fee

cases.  The attorney fee case is not the case Congress expressed its intent to

17

encourage; and in order to be included, it must ride piggyback on the civil rights case."
805 F.2d at 151.  Plaintiffs claim, and submit multiple declarations from local civil rights
practitioners attesting, that limiting fees for fees to 3% of the amount obtained for fees
arising out of the merits actually discourages practitioners from taking on civil rights
cases.  This argument is not persuasive.  Plaintiffs fail to explain how they are less than
fully compensated in a case where they have already obtained fees for their efforts on
the merits, particularly where they would not likely recover fees for the time they
expended in obtaining their fees had they actually billed their clients for the time spent
on the merits.  *See Coulter*, 805 F.2d at 151 ("[I]n the private marketplace, lawyers
usually do not charge, and clients do not usually pay, for the time it takes lawyers to
calculate their fees.").

The court acknowledges that applying the 3% cap in this case results in a drastic
reduction in the amount requested by Plaintiffs for the work they expended in obtaining
their fees in this case.  But this reduction demonstrates the point of *Coulter* - the 3% cap
is intended to prevent precisely the type of behavior exhibited by Plaintiffs' counsel in
this case.  There is simply no basis for departing from the well-established and oft-
applied rule of *Coulter* in this case.[9]  Accordingly, it is recommended that Plaintiffs be

---

[9] To the extent that this Court would not otherwise apply the 3% cap in this case and
would examine the fees independent of the rationale in *Coulter*, the fees-for-fees award
would still require some proportionality between the compensation for work in the main
case and compensation for fees.  *Coulter*, 805 F.2d at 151 ("Such guidelines and
limitations are necessary to insure that the compensation from the attorney fee case will
not be out of proportion to the main case and encourage protracted litigation.").  Even
considering Plaintiffs' contentions regarding the purported failures of the cap, there can be
no argument that the purpose of § 1988 "was to encourage lawyers to bring successful civil
rights cases, not successful attorney fee cases.  The attorney fee case is not the case
Congress expressed its intent to encourage; and in order to be included, it must ride

awarded a total of $13,639.07 in fees for fees in this matter, an amount equal to 3% of

the amount they obtained for fees related to the merits of this case.[10]

## B.    Costs

Plaintiffs request $14,943.98 in costs in this matter.  Generally, in addition to

attorney's fees, a prevailing party under § 1983 is entitled to recover reasonable

expenses that are usually itemized and billed separately.  *See, e.g., Jackson v. Austin*,

267 F. Supp.2d 1059, 1069 (D. Kan. 2003).  Many of the expenses detailed on Plaintiffs'

list of fees-for-fees expenses include fees for copying, which are considered costs under

Rule 54(d)(1) of the Federal Rules of Civil Procedure, and the cost of electronic

research.  Defendant does not challenge these expenses.  The list of expenses,

however, includes three entries for items other than routine expenses:

---

piggyback on the civil rights case."  *Id*.  Plaintiffs' fees-for-fees application is a quintessential example of the type of disproportionate fees-for-fees request that *Coulter* and those cases that follow it were intended to prevent.  *See NEOCH*, 695 F.3d at 575 ("While the availability of an award of fees for defending fee awards provides additional protection for [lawyers who take on civil rights cases], this needs to be balanced against the unwanted incentives that would result from protracted litigation seeking fees for fees."). An examination of the fees-for-fees application reveals that Plaintiffs' counsel have pursued a "scorched earth" approach to fees with no regard for efficiency or scale, overbriefed and overstaffed the issues in support of the fee application, made no effort to exercise reasonable judgment and submitted a fee bill that is absolutely shocking.  If this Court were not required to follow the guidelines of *Coulter*, it would apply a 90% across-the-board reduction of fees in this case.

[10] Section 1988 places the decision whether to award fees in the discretion of the district court.  42 U.S.C. § 1988(b).  Federal courts have interpreted this discretionary language to permit a district court to entirely decline to award fees where a fee request is "grossly excessive" or "shocks the conscience of the court."  *See, e.g., Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 96 (4th Cir. 1993).  The fees for fees request made by Plaintiffs in this matter satisfies both of these requirements, and this Court came perilously close to recommending a complete denial of fees in this case.  In the exercise of discretion, however, this Court determined that applying the 3% cap of *Coulter* was sufficient to merit a reasonable and appropriate result in this matter.

| Date | Amount | Description |
|------|--------|-------------|
| 3/12/13 | $1,912.50 | Invoice #205595-96, professional services including discussion of issues, review of Magistrate's R&R, Amicus Brief, draft and finalization of declaration; telephone conference |
| 10/21/13 | $2,500.00 | Payment for Yale Law School legal-writing faculty member Robert Harrison. . . . Expert consulting fee to Robert Harrison of the Yale Law School for independent legal-writing consulting analyzing principal brief, given the stakes, and for the attorneys involved to receive rigorous, independent feedback about their arguments regarding their own work and legal value |
| 2/17/14 | $1,000.00 | Final payment to Robert Harrison for Appellate Brief work |
| Total | $5,412.50 | |

These entries reflect that Plaintiffs obtained outside consultants for the purpose of reviewing the issues and improving their appellate brief.  These expenses are not reasonable.  During the litigation on the initial fee application in this case, Plaintiffs' counsel made great effort, and incurred substantial expense, to demonstrate that Plaintiffs were represented in this matter by highly educated, skilled and experienced litigators, who specialize in the area of civil rights.  Their billing records reflect that they spent numerous hours discussing the issues in this matter, and drafting and editing the briefs, internally.  Given this, these expenses for outside consultants are not reasonable and should be deducted.  Accordingly, it is recommended that Plaintiffs receive costs in the amount of $9,531.48.

### IV.  Conclusion

For the reasons given above, it is recommended that Plaintiffs be awarded a total of $13,639.07 in fees and $9,531.48 in costs for the litigation related to Plaintiffs' original request for fees in this matter.

Date: March 31, 2015                           /s/ Nancy A. Vecchiarelli
                                               United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See* *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

21